Rufus R. KEYS, Specialist, U.S.
Army, Petitioner,

v.

Raymond D. COLE, Colonel, Military
Judge, and The United States,
Respondents.

Misc. No. 90–13.
CM 8802292.

U.S. Court of Military Appeals.

Argued July 31, 1990.
Decided Sept. 27, 1990.

For Petitioner: *William J. Holmes, Esq.* (argued); *Lieutenant Colonel Russell S. Estey, Captain W. Renn Gade, Captain Gregory A. Gross, Captain R. J. Vance* (on brief).

For Respondents: *Captain Gary A. Khalil* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Martin D. Carpenter* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

At issue in this petition for extraordinary relief is petitioner's claim that he is entitled to pay. First, he asserts a right to a return of pay that he forfeited pursuant to an earlier court-martial sentence that has since been set aside—29 MJ 920 (ACMR 1989); second, he asserts a right to be paid while being held for a rehearing of the original charges, even though his period of enlistment ended while the appeal from his first conviction was pending. To add grist to his claim, petitioner complains that, without this money, he cannot afford to retain the civilian defense counsel for his upcoming rehearing who represented him at his original trial.

I

This case comes to this Court in the following context. On October 12 and 13, 1988, a military judge sitting alone as a general court-martial convicted Keys (despite his pleas) of possessing and distributing marijuana and of rape, in violation of Articles 112a and 120, Uniform Code of Military Justice, 10 USC §§ 912a and 920, respectively; the judge sentenced him to dishonorable discharge, confinement for 25 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results on December 28, 1988.

On its review, the Court of Military Review set aside the findings and sentence—but authorized a rehearing—because the military judge had erred in denying defense counsel an initial continuance. 29 MJ 920. The court denied the Government's petition for reconsideration on February 5, 1990. Important to this petition is the fact that, while Keys' appeal of his first court-martial was pending in the Court of Military Review, his period of enlistment had expired.

On February 20, 1990, the convening authority referred the charges to a general court-martial for a rehearing pursuant to the appellate court's authorization. At an Article 39(a), UCMJ, 10 USC § 839(a), ses-

sion held on April 9, the military judge heard oral argument on Keys' earlier-filed motion to dismiss for want of *in personam* jurisdiction, but ultimately he denied the motion.

Keys then filed his petition for extraordinary relief in this Court. Upon considering this petition, we declined to review the jurisdictional claim. Instead, we decided to look at another aspect of the petition—namely, the complaint that Keys has not been repaid the forfeited money withheld from his pay pursuant to the original, now-vacated sentence and that he has not been paid at all since his enlistment period ended while he was serving that sentence.

## II

At the outset, the Government resists Keys' petition by challenging the appropriateness of an extraordinary writ to right the alleged wrongs. The Government points out that Keys has failed to exhaust a number of available administrative and legal remedies on the way to this Court. As the appellate Government counsel succinctly states in his brief, "Mandamus is [']intended to provide a remedy for a['] petitioner [']*only if he has exhausted all* ['] *of the* [']*avenues of relief and only if the* ['] *respondent* [']*owes him a clear nondiscretionary duty.*['] *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. [2013, 2022, 80 L.Ed.2d 622] (1984) (Emphasis added)."

It is true, nonetheless, that Keys has made serious efforts through normal pay channels to retrieve the disputed pay. He applied for both the withheld back pay and continuation of his regular pay to the person in charge of the Inmate Pay Section at the United States Disciplinary Barracks where he remains confined. That person relied on various provisions of the Department of Defense Pay Manual (DODPM) and denied the request. When Keys pursued his claim to the Finance and Accounting Officer at Fort Leavenworth, where the Disciplinary Barracks is located, that officer deferred to a person in the Special Pay Section of the Finance Office, who in turn agreed with the original determination of the Inmate Pay Section.

■ While there may be further administrative recourse available to Keys, as the Government suggests, it is apparent from the efforts he already has earnestly pursued that such recourse likely would be futile. Under these circumstances, we will not require exhaustion of further means as a condition precedent to having his claims litigated.

Moreover, the nature of the claims makes them peculiarly of the sort that is appropriate for this Court to consider. As to the claim for back pay, Keys relies upon an interpretation of various provisions of the Uniform Code of Military Justice and how they apply to a court-martial sentence that has been set aside by an appellate court. This is not the sort of theory that a court in the military justice system ought to defer to administrative processing as a predicate to the court's considering it. Additionally, Keys urges that denial of the money will result in his being deprived of defense counsel of his choice at his upcoming court-martial; whatever the merits of that argument, *see infra,* it is the sort of complaint that appropriately can be resolved before that court-martial—and the claimed denial of justice—takes place.

## III

As is apparent from the preceding discussion, Keys' monetary claim actually is two claims that are entirely distinct from each other. Accordingly, we will discuss them separately.

### *Return of Forfeited Pay*

Initially, Keys contends that retention of the pay that was withheld pursuant to the forfeiture provision of his set-aside sentence amounts to punishment before trial, which is prohibited by Article 13 of the Code, 10 USC § 813, which provides: "No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, . . ." Reliance

upon this provision under the facts of this case, however, ignores the fact that the disputed back pay was initially withheld under a colorably lawful court-martial sentence.

There might be more substance to this theory if, merely after being served with charges that are referred to a court-martial, an accused's pay is withheld upon the possibility that some future sentence might include forfeiture of pay. Likewise, there might be more substance if Keys' forfeitures had continued even after the first sentence had been set aside.[1]

Such a situation might be conceptually akin to the one we faced in *Moore v. Akins*, 30 MJ 249 (CMA 1990). There, we held that, after reversal of a conviction by the Court of Military Review, the servicemember must be released from confinement unless circumstances existed that warranted pretrial confinement on renewed charges. We made this determination even though there, the Government had certified the correctness of the appellate court's decision to this Court for review. We concluded that, once his sentence had been set aside on appeal, no valid authority existed for continuing his post-trial confinement.

■ Obviously, if the Army had continued, after the Court of Military Review's action here, to withhold pay from Keys to which he indisputably would have been entitled except for the first sentence, his reliance on Article 13—and certainly recourse to *Moore v. Akins, supra*—might be better received. But the same considerations do not apply with equal force to the facts of this case where the "punishment" was proper under color of law at the time it was imposed.

■ For the same reasons, we must reject Keys' second statutory basis for his petition—Article 57(a), UCMJ, 10 USC § 857(a). Article 57(c) provides that sentences of a court-martial (except sentences to confinement) "are effective on the date ordered." Made even more clear as to

sentences to forfeitures of pay, subsection (a) to which Keys points, states, "No forfeiture may extend to any pay or allowances accrued before the date on which the sentence is approved by the person acting under section 860(c) of this title (article 60(c))." Petitioner argues that, because he has not yet had such a *lawful* sentence approved, any forfeitures prior to a possible future sentence at his rehearing that includes forfeitures violates this provision. As with Keys' earlier argument, however, we do not view this provision to be applicable under the facts of this case where the forfeitures, when effected, were proper under color of law.

■ Finally, Keys relies upon Article 58a, UCMJ, 10 USC § 858a, entitled: "Sentences: reduction in enlisted grade upon approval." Subsection (a) provides that, as a matter of law, a "sentence ... that includes a" punitive discharge, "confinement; or hard labor without confinement; reduces that member to pay grade E–1, effective on the date of that approval." Subsection (b), urged by Keys, states:

> If the sentence of a member who is reduced in pay grade under subsection (a) is set aside or disapproved, or, as finally approved, does not include any punishment named in subsection (a)(1), (2), or (3), the rights and privileges of which he was deprived because of that reduction shall be restored to him and he is entitled to the pay and allowances to which he would have been entitled for the period the reduction was in effect, had he not been so reduced.

Keys acknowledges that this statute is specific and addresses only reduction in grade and lost pay from the reduction, not forfeiture of pay. Nonetheless, he argues that the *concept* of this provision supports his claim—that concept being that a reduction in grade is void in effect *ab initio* when the sentence that includes the reduction is set aside. It would seem, however, that if Congress had wanted similar treatment of forfeitures—that is, immediate return of

---

1. Of course, since the Army had stopped paying Keys when his enlistment had ended—before

the first sentence had been set aside—there was no occasion for this to occur.

them upon disapproval of the sentence upon which they were withheld—Congress would have said so. Instead, this statutory language is specific and is limited.

█ Even so, we might be somewhat more sympathetic to Keys' conceptual argument if there was no other provision in the Uniform Code of Military Justice that *did* address forfeitures. That is not the case. More expressly applicable—and, thus, more dispositive of this petition—than any of the provisions to which Keys has pointed is Article 75(a), UCMJ, 10 USC § 875(a), entitled "Restoration":

> Under such regulations as the President may prescribe, all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved, except an executed dismissal or discharge, *shall be restored unless a new trial or rehearing is ordered and such executed part is included in a sentence imposed upon the new trial or rehearing.*

(Emphasis added.) It is clear to us that the unambiguous language of this statute implies that, if a new trial or rehearing is ordered, as in this case, all property—*i.e.* forfeitures—will *not* be restored until that rehearing is held. Again, of course, this provision would not entitle the United States to *continue* in the interim to withhold pay otherwise due by relying on the forfeiture element of a set-aside sentence. *See generally* Art. 13; *cf. Moore v. Akins, supra.* However, it does quite clearly entitle the United States to *retain* pay *already* withheld prior to the sentence being set aside, until such time as either a decision is made not to hold a rehearing or a rehearing is held.

Moreover, paragraph 70509b(1) of the DODPM, promulgated pursuant to Article 75(a)'s empowerment to prescribe regulations to carry out that statute, is fully consistent with the Army's treatment of Keys. That paragraph addresses both executed and unexecuted court-martial sentences. Keys' first sentence, under which the forfeitures were effected, was an exe-

cuted sentence, so the following language is pertinent:

> When an executed court-martial sentence which includes a forfeiture is set aside or disapproved, and a new trial or rehearing is ordered which results in an approved sentence to forfeiture, credit the member with the amount of any forfeiture effected under the first sentence.

Of course, if Keys was correct and he was lawfully entitled to a return of his withheld pay *prior* to the rehearing, there would be *nothing* to "credit" against any forfeiture element of a sentence at the rehearing. Inferentially, then, this regulation fully comports with Article 75(a), which it implements.

Accordingly, we reject Keys' multifaceted claim to a return at this time of his pay that was withheld pursuant to the forfeiture element of his set-aside sentence. The ultimate disposition of those monies will be determined by the convening authority's action on an eventual sentence at Keys' rehearing.

*Pay Pending Rehearing*

█ If an accused is in pretrial confinement awaiting rehearing, his pay status—at least insofar as the Uniform Code of Military Justice is concerned—should be the same as if he had never been tried in the first instance. Thus, a decision by a commander to confine such an accused pending a rehearing would have no more adverse effect on the accused's pay than if the same decision were made while he was awaiting the original trial. In other words, if such an accused still was within his period of enlistment and, thus, indisputably entitled to full pay, a forfeiture element of a set-aside sentence would have no impact on his right to have full pay reinstated from the moment that his first sentence was set aside until such time as a sentence on rehearing might adjudge forfeitures. *See* our discussion, *supra,* in connection with Article 13 and *Moore v. Akins, supra.*

Keys, though, is *not* within his period of enlistment while he is in confinement awaiting his rehearing. Recall that Keys

was in post-trial confinement pursuant to his first sentence, pending appeal to the Court of Military Review, when his term of enlistment expired and his pay stopped. Subsequently, the Court of Military Review set aside that sentence, at which time the convening authority ordered Keys into pretrial confinement awaiting a rehearing.

Thus, the question becomes, do the regulations of the DODPM upon which Keys relies nonetheless entitle him to pay while he is in pretrial confinement and is being held in the Army pending his court-martial?[2] *See United States v. Douse,* 12 MJ 473, 481 n.5 (CMA 1982) (Everett, C.J., concurring in the result), citing *Rhoades v. United States,* 668 F.2d 1213, 229 Ct.Cl. 282 (1982).

The various provisions of the DODPM present an intricate effort at addressing virtually every possible factual setting in regard to entitlement to pay. For instance, paragraph 10316a(3) provides that "[p]ay and allowances accrue to a member in military confinement except ... [w]hen the term of enlistment expires. See paragraph 10317 below." Thus, the military complied with this provision when it paid Keys (and withheld that pay pursuant to the sentence to forfeiture) while he was in post-trial confinement up until his term of enlistment expired. In addition, inferentially, the military also complied with this provision when it *stopped* his pay as of the end of that enlistment, while Keys still was in posttrial confinement serving his adjudged sentence.

When that sentence was set aside, though, Keys' confinement status changed from post-trial to pretrial. At that point, the reference in the above-quoted language to paragraph 10317, entitled, "Term of Enlistment Expires," became relevant.

Subsection "a" of that paragraph provides that "[p]ay and allowances accrue to a member upon return to a full duty status. Full duty is attained when a member, not in confinement, is assigned useful and productive duties (as opposed to duties pre-scribed by regulations for confinement facilities) on a full-time basis ... " Since Keys was *not* returned to full-duty status and did *not* perform "useful and productive duties" distinct from "duties prescribed ... for confinement facilities," this provision is of no help to his claim for pay after his term of enlistment expired and after his post-trial confinement ended; indeed, it implies the converse.

Subsection "d," headed "Confined Awaiting Trial by Court–Martial," would seem from its title to be most directly on point regarding that period of time. This provision states:

*If a member is confined awaiting court-martial trial when the enlistment expires,* pay and allowances end on the date the enlistment expires. If the member is acquitted when tried, pay and allowances accrue until discharge.

Here, of course, Keys was in post-trial confinement—not pretrial confinement—when his enlistment expired. So, literally, this provision would not seem to apply to stop Keys' entitlement to pay. On the other hand, where that post-trial confinement ended after the enlistment had expired and where he immediately went into pretrial confinement, the rationale of this provision might arguably apply—at least to the period of time after the sentence had been set aside and Keys was in pretrial confinement.

As to the period of time after the enlistment had expired but before the sentence had been set aside, subsection "e" provides that pay and allowances stop accruing when "the enlistment expires unless the sentence is completely overturned or set aside as specified in paragraph 70509. They will not accrue again until the date the member is restored to a full-duty status." Thus, even though Keys' first sentence had been set aside, he never was "restored to a full-duty status," so he runs up against the same problem that we discussed earlier.

---

**2.** *See United States v. Poole,* 30 MJ 149 (CMA 1990), concerning the power of the military to retain a servicemember on active duty beyond his term of enlistment for purposes of trial by court-martial.

Thus, it might well be concluded from these provisions of the DODPM that Keys is not entitled to any pay either for the period after his term of enlistment expired to the date his sentence was set aside or from the date his sentence was set aside until the present.

We are aware, however, that the decision of the Court of Claims in *Rhoades v. United States, supra,* might well suggest to the contrary. That case arose on facts that are, in all important respects, identical to this case. The court there concluded that, because Rhoades' situation fell into a hole not specifically covered by the DODPM, these regulatory provisions we have discussed earlier did not usurp his entitlement to pay. Normally, we might be inclined under the notion of comity to give effect here to the decision in *Rhoades, cf. Woodrick v. Divich,* 24 MJ 147 (CMA 1987); but we hesitate to do so here for two reasons.

■ First, the court in *Rhoades* relied upon then-paragraph 10316b(1) of the DODPM, which now appears as subsections (d) and (e) of paragraph 10317. Critically, however, the present language reads somewhat differently in substance from the former provision; indeed, while the DODPM does not so indicate, it is entirely possible that the language was changed in response to *Rhoades.* Under these circumstances, we are unsure whether the decision reached by the court in *Rhoades* under the regulations then in effect would be the same as that court might reach today under the current regulations.

Second, we hesitate, in light of this change in language, to interpret military-pay regulations under circumstances where there is another court whose expertise is in that area of the law. If such review were tied to some provision of the Uniform Code of Military Justice or to some notion of due

process that impacted on military justice, *see infra,* we might be disposed otherwise.

This Court has broad authority under the All Writs Act, 28 USC § 1651(a). *See Unger v. Ziemniak,* 27 MJ 349 (CMA 1989); *United States Navy–Marine Corps Court of Military Review v. Carlucci,* 26 MJ 328 (CMA 1988). Regardless of the scope of our jurisdiction under that statute, however, we have discretion to determine whether and when relief is appropriate. Under these circumstances, we conclude that Keys should pursue his claim of monetary entitlement in the United States Claims Court,[3] which has special expertise in this field, rather than in this Court.

## IV

As mentioned early in this opinion and as adverted to at other times throughout the opinion, Keys urges that this Court should order the requested pay because failure to do so would amount to denying him counsel of his choice at his rehearing. His rationale is that, without this money, he cannot afford to hire the same civilian defense attorney who represented him at his original trial. *See* Art. 38(b)(2), UCMJ, 10 USC § 838(b)(2).

■ Two responses come immediately to mind. First, Keys presently is represented by appointed military defense counsel, *see* Art. 27(a)(1), UCMJ, 10 USC § 827(a)(1), and he has no constitutional right to hire a civilian attorney under these circumstances. He now has all that the law requires that he have by way of defense representation.

■ Second, any omission to satisfy Keys' legal right to representation would be remedied in some direct fashion to assure him that right. The remedy would not be circumferential by ordering money paid to him to which we already have decided that he has no independent right.

**3.** Keys urges this Court to exercise our extraordinary powers on his behalf because he contends that there are many other servicemembers who are similarly situated. However, unless that fact itself creates a more direct and tangible connection to military justice than does Keys' claim alone, it is not relevant to our declination here. In any event, to whatever extent the United States Claims Court permits, Keys could raise his claim in the context of a class action.

## V

The petition for extraordinary relief in the nature of a writ of mandamus is denied.

Judge COX concurs.

SULLIVAN, Judge (concurring):

The requested relief in this case was an order directing the dismissal of the charges against petitioner or an order of abatement of the proceedings until the petitioner's purported pay claim is satisfied. I agree with Chief Judge Everett's denial of this request for extraordinary relief.