UNITED STATES, Appellee,

v.

Timothy S. SHELTON, Staff Sergeant,
U.S. Army, Appellant.

No. 99–0595.
Crim.App. No. 9600456.

U.S. Court of Appeals for
the Armed Forces.

Argued May 4, 2000.

Decided Aug. 30, 2000.

CRAWFORD, C.J., delivered the opinion of the Court, in which EFFRON, J., and COX, S.J., joined. GIERKE, J., filed an opinion concurring in part and in the result and dissenting in part. SULLIVAN, J., filed an opinion concurring in the result.

For Appellant: *Captain Sean S. Park* (argued); *Colonel Adele H. Odegard, Major Jonathan F. Potter,* and *Captain David S. Hurt* (on brief).

For Appellee: *Captain Katherine M. Kane* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Captain Mary E. Braisted* (on brief).

Chief Judge CRAWFORD delivered the opinion of the Court.

On February 5, 1996, pursuant to his pleas, appellant was convicted by military judge alone of wrongfully selling military property (4 specifications), larceny of military property (4 specifications), and false swearing (2 specifications), in violation of Articles 108, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 908, 921, and 934, respectively. Appellant was sentenced to a dishonorable discharge, 9 years' confinement, forfeiture of all pay, and reduction to the lowest enlisted grade. The summary of the "charges, specifications, pleas, and findings" in the first staff judge advocate recommendation was as follows:

| Charge | Article | Spec | Summary of the Offense | Plea | Finding |
|--------|---------|------|------------------------|------|---------|
| I | 108 | 1 | Military property, selling, of a value of more than $100.00 (between February and June 1995) | G | G |

| | | 2 | Military property, selling, of a value of more than $100.00 (between February and June 1995) | * | * |
| | | 3 | Military property, selling, of a value of more than $100.00 (June 1995) | * | * |
| | | 4 | Military property, selling, of a value of more than $100.00 (between January and June 1995) | * | * |
| II | 121 | 1 | Larceny of military property, of a value of more than $100.00 (between February and June 1995) | G | G |
| | | 2 | Larceny of military property, of a value of more than $100.00 (between February and June 1995) | G | G |
| | | 3 | Larceny of military property, of a value of more than $100.00 (between February and June 1995) | G | G |
| | | 4 | Larceny of military property, of a value of more than $100.00 (between February and June 1995) | NG | * |
| | | 5 | Larceny of military property, of a value of $100.00 or less (between February and June 1995) | G | G |
| III | 134 | 1 | False Swearing, (30 June 1995) | G | G |
| | | 2 | False Swearing, (6 July 1995) | G | G |

* Dismissed on a motion prior to findings.

On September 6, 1996, pursuant to an erroneous staff judge advocate recommendation, the convening authority approved the sentence but reduced the confinement to 48 months pursuant to a pretrial agreement. On March 27, 1998, the Court of Criminal Appeals set aside the convening authority's action because of misadvice given to the convening authority by the staff judge advocate in his post-trial recommendation, which omitted pleas and findings of guilty to three specifications of wrongfully selling military property. The asterisks that appeared as to specifications 2, 3, and 4 of Charge I were erroneous. The recommendation should have shown that pleas of guilty were entered and findings of guilty were made to each specification.

On August 13, 1998, pursuant to a new staff judge advocate recommendation, the convening authority again approved only so much of the sentence as provided for a dishonorable discharge, confinement for 4 months, forfeiture of all pay, and reduction to the grade of Private E1. On January 8, 1999, the Court of Criminal Appeals affirmed the findings and sentence.

We granted review of the following issue:
WHETHER APPELLANT IS ENTITLED TO RELIEF IN ACCORDANCE WITH UNIFORM CODE OF MILITARY JUSTICE ARTICLE 57(a)(1), 10 USC § 857(a)(1)(1988) FOR THE PERIOD OF TIME IN WHICH FORFEITURE OF PAY WAS UNLAWFULLY TAKEN, SINCE THE ORIGINAL ACTION BY

THE CONVENING AUTHORITY WAS SET ASIDE AND RETURNED FOR A NEW ACTION AND RECOMMENDATION; AND THE CONVENING AUTHORITY DID NOT TAKE NEW ACTION UNTIL AUGUST 13, 1998.

We specified the following issue:

WHETHER THE DECISION OF THE COURT OF CRIMINAL APPEALS TO "SET ASIDE" THE ORIGINAL ACTION OF THE CONVENING AUTHORITY NULLIFIED THE REDUCTION IN GRADE AND FORFEITURE OF PAY EXECUTED AS A RESULT OF THE ORIGINAL ACTION BY THE CONVENING AUTHORITY; AND, IF SO, WHETHER ANY SENTENCE TO REDUCTION IN GRADE AND FORFEITURE OF PAY DID NOT BECOME EFFECTIVE UNTIL THE DATE OF THE SECOND CONVENING AUTHORITY'S ACTION.

The Government asserts that because the second convening authority action also approved total forfeiture of pay, appellant is not entitled to pay beyond September 6, 1996, the date of the first convening authority action. The Government claims that neither Congress nor the President intended for restoration to occur because, in his second action, the convening authority approved the same sentence.

The defense argues that when the Court of Criminal Appeals set aside the first convening authority action, the action was nullified. Thus, Staff Sergeant Shelton was entitled to relief from September 6, 1966, the date of the first convening authority action, to December 8, 1997, the date of the expiration of appellant's term of service (ETS).[1] The defense also argues that the Government's reliance on Article 75, UCMJ, 10 USC § 875, in denying him this relief is misplaced because that provision "deals with sentences which have been set aside, and not with actions that have been set aside."

1. Appellant does not request, and we do not find him to be entitled to, relief beyond his ETS date.

2. We note that at the time of appellant's trial, forfeitures could be executed under Article 57(a) only upon approval of the convening authority.

## Discussion

Whether appellant is legally entitled to back pay between the date of the first action, September 6, 1996, and his ETS date, December 8, 1997, is a question of law that is reviewed *de novo*. *United States v. Garcia,* 44 MJ 496, 497 (1996).

This case requires us to examine Articles 57(a) and 75(a). Article 57(a)(1)(B) provides that forfeitures shall begin upon approval by the convening authority. The clear language of Article 57(a)(1)(B), as applied to appellant's case, is such that forfeitures would begin on September 6, 1996, the date of the convening authority's first action.

As to the restoration of pay, Article 75(a) provides as follows:

Under such regulations as the President may prescribe, all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved, except an executed dismissal or discharge, shall be restored unless a new trial or rehearing is ordered and such executed part is included in a sentence imposed upon the new trial or rehearing.

By its terms, Article 75(a) applies to situations where the sentence was set aside or disapproved. Under Article 75(a), when that portion of a court-martial sentence that includes forfeitures has been executed, and the executed sentence subsequently is set aside or disapproved, the amount so forfeited must be restored, except when that amount is included in a sentence imposed upon a new trial or rehearing. The Article applies to the "executed part of a court-martial sentence," precludes restoration when "such executed part is included in a sentence imposed upon the new trial or rehearing," and makes no distinction between executed sentences that are disapproved as a result of trial error and executed sentences disapproved as a result of convening authority error.[2]

Under amendments enacted in the National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, Title XI, § 1121, 110 Stat. 462 (1996), forfeitures now take effect 14 days after trial, unless sooner imposed by the convening authority. Art. 57(a)(1)(A). Convening au-

As to the legislative history of Article 75, questions at the hearings focused on what would happen when there had been a dismissal or the charges could not be sustained. Hearings on S. 857 and H.R. 4080 Before a Subcomm. of the Senate Armed Services Comm., 81st Cong., 1st Sess. (1218–22) (1949). The answers disclose that at the end of a new trial or rehearing when there is an acquittal or a lesser sentence, the accused is entitled to be made whole or at least whole as to the difference between the original sentence and the second sentence. Certainly, a more severe sentence could not be approved. Art. 63, UCMJ, 10 USC § 863. That was not and is not true in the federal system. *Cf. Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

Amplifying on Article 75, as part of the President's rule-making authority, the 1951 Manual provided:

If, in his action on the record of a rehearing, the convening authority disapproves the findings of guilty of all charges and specifications which were tried at the former hearing and that part of the sentence which was based on such findings, he will, unless a further rehearing is ordered, provide in his action that all rights, privileges, and property affected by any executed portion of the sentence adjudged at the former hearing shall be restored. If the court, at a rehearing, acquits the accused of all charges and specifications which were tried at the former hearing, the promulgating order will provide for the restoration of all rights, privileges, and property affected by an executed portion of the sentence adjudged at the former hearing.

Para. 89c(7), Manual for Courts–Martial, United States (1951).

Article 75 was based in part on Article of War (AW) 50½. AW 50½ provided:

When ... any reviewing or confirming authority disapproves or vacates a sentence the execution of which has not therefore been duly ordered, he may authorize or direct a rehearing.... Upon such rehearing the accused shall not be tried for any offense of which he was found not guilty by the first court, and no sentence in excess of or more severe than the original sentence shall be enforced unless the sentence be based upon a finding of guilty of an offense not considered upon the merits in the original proceeding.... After any such rehearing had on the order of the President, the record of trial shall, after examination by the board of review, be transmitted by the Judge Advocate General, with the board's opinion and his recommendations, directly to the Secretary of War for the action of the President.

Articles of War–Act of June 4, 1920, *reprinted in* 1921 Manual at 513–14.

Article 75(a) provides for "restor[ation]" of "all rights, privileges, and property" "unless a new trial or rehearing" "include[s]" the same sentence. Taken together, Article 75(a) and the Manual contemplate that if a reviewing authority does not disapprove the findings or the sentence, there are no rights or privileges to be restored.

Additionally, paragraph 70509 of the Department of Defense Pay Manual provides:

**Sentences Disapproved or Set Aside**

**a. When New Trial or Rehearing Is Not Ordered** When a court-martial sentence is set aside or disapproved and a new trial or rehearing is not ordered, all rights, privileges, and property affected by the executed part of the sentence are restored to the member. Such restoration includes any executed forfeiture and any pay and allowances lost as a result of an executed reduction in grade.

**b. New Trial or Rehearing Ordered**

(1) When an executed court-martial sentence which includes a forfeiture is set aside or disapproved, and a new trial or rehearing is ordered which results in an approved sentence to forfeiture, credit the member with the amount of any forfeiture

thority actions, however, typically take place more than 14 days after trial. Therefore, as a practical matter, forfeitures will be executed by operation of law as a result of the court-martial sentence, rather than as a result of the convening authority's action, in most cases. As a result, it is unlikely that the issue presented in this case, involving the relationship between Article 75(a) and action by a convening authority on forfeitures, will recur in the future.

effected under the first sentence. When an unexecuted court-martial sentence which includes a forfeiture is set aside or disapproved and a rehearing is ordered, the member is entitled to full pay and allowances (subject to other proper deductions) for the period from the convening authority's action on the original sentence until the convening authority's action on the subsequent sentence. Entitlement to pay and allowances thereafter depends on the terms of the new sentence.

(2) When a previously executed dishonorable or bad conduct discharge is not imposed by a new trial, the member is entitled to the pay and allowances which the member would have received had the dishonorable or bad conduct discharge not been executed. When a previously executed dismissal of an officer is not imposed by a new trial, an administrative discharge is substituted. The President may reappoint the officer to the grade and rank the officer would have attained if the officer had not been dismissed. The total time between the dismissal and reappointment is considered as actual service for all purposes, including pay and allowances.

Para. 70509, Department of Defense Financial Management Regulation, Vol. 7A, Military Pay Policy and Procedures, Active Duty and Reserve Pay (December 1994).

The purpose of Article 75(a) was to provide for restoration only after an acquittal or the setting aside of charges and sentence. It was not intended to provide restoration in situations where a procedural error was corrected and the same or greater sentence was reimposed.

We conclude that restoration under the facts of appellant's case would run counter to both congressional intent and to this Court's efforts to encourage corrective action of erroneous statements in the staff judge advocates' recommendations. *See, e.g., United States v. Wheelus*, 49 MJ 283 (1998). Certainly, allowing appellant to receive back pay would be a windfall and would discourage corrective action. However, in *United States v. Foecking*, 22 USCMA 46, 50, 46 CMR 46, 50 (1972), this Court held

that when the convening authority's first action is not "lawful," the forfeitures are not effective until there is a legally correct action by the convening authority approving the sentence. Accordingly, we hold that *Foecking* construed Article 57(a) in a manner inconsistent with the legislative purpose expressed in Article 75(a), which is to avoid giving an accused a windfall when he or she is resentenced. To the extent that *Foecking* is inconsistent with this opinion, it is overruled.

Notwithstanding our decision to overrule *Foecking*, it was the law when appellant was sentenced, and he was entitled to its benefit. Thus, our decision with respect to *Foecking* is prospective and not applicable to appellant's case.

Nevertheless, we decline to order any relief. Although appellant has asserted that he is entitled to pay for the period between September 6, 1996, and August 13, 1998, he has provided no documentation to support his claim.

The decision of the United States Army Court of Criminal Appeals is affirmed.

GIERKE, Judge (concurring in part and in the result and dissenting in part):

In my view, the majority errs by deciding this case under Article 75(a), UCMJ, 10 USC § 875. This case is controlled by Article 57(a), not Article 75(a). By its terms, Article 75(a) applies to situations where the "executed part of a court-martial sentence" was set aside or disapproved. Article 75(a) is silent regarding cases where only the convening authority's action, but not the sentence, was set aside or disapproved. While it is true that setting aside a sentence always has the effect of setting aside the convening authority's action, setting aside the convening authority's action does not set aside the sentence. In appellant's case, the Court of Criminal Appeals did not set aside the sentence; it set aside the convening authority's action. Unpub. op. at 2. Thus, in my opinion, Article 75(a) is inapplicable to appellant's case.

The granted issue is whether, under the version of Article 57(a) in effect at the time,

the forfeitures should have been applied to appellant's pay beginning on the date of the first convening authority's action on September 6, 1996, or on the date of the second convening authority's action on August 13, 1998. In *United States v. Foecking,* 22 USCMA 46, 46 CMR 46 (1972), this Court held that when the convening authority's first action is not "lawful," the forfeitures are not effective until there is a legally correct action by the convening authority approving the sentence. However, in *Keys v. Cole,* 31 MJ 228, 231 (CMA 1990), this Court held that forfeitures were effective on the date of the convening authority's action, even if the findings and sentence were set aside on appellate review because of a trial error, because "the forfeitures, when effected, were proper under color of law." *See also Dock v. United States,* 46 F.3d 1083, 1087–88 (Fed.Cir.1995).

*Keys* and *Foecking* are not inconsistent, but they are factually different. *Keys* involved a reversal for a trial error—improper denial of a continuance. *Foecking* addresses the situation where—as in this case—the convening authority's' action itself was defective. In such a situation, the *Foecking* rationale would compel the conclusion that the sentence was not lawfully ordered executed until the second convening authority's action on August 13, 1998.

The question remains whether the *Foecking* interpretation of Article 57(a) is inconsistent with the intent of Congress. I agree with the majority that *Foecking* construed Article 57(a) in a manner inconsistent with the legislative purpose expressed in Article 75(a), and I join in the decision to overrule *Foecking.* I also agree that our decision to overrule *Foecking* is prospective and not applicable to appellant's case. *See United States v. Allbery,* 44 MJ 226 (1996).

Finally, I join the majority's conclusion that, while appellant is entitled to the benefit of *Foecking,* he is not entitled to any relief from this Court. Even if appellant had provided documentation to support his claim for back pay, this court lacks fact-finding authority. Jurisdiction to compute and order restoration of any back pay owed appellant rests with the United States Court of Federal Claims, not this Court. *See United States v. Allen,* 33 MJ 209, 215–16 (CMA 1991); *Keys,* 31 MJ at 234.

SULLIVAN, Judge (concurring in the result):

I agree with the majority opinion that this Court should deny appellant relief. However, I disagree with the rationale which the majority opinion uses to reach this conclusion.

The majority opinion resolves Issue I by means of the following pronouncement: "Certainly, allowing appellant to receive back pay would be a windfall and would discourage corrective action." 53 MJ at 391 (no legal authority cited). I would resolve this case based on law, not equity.

Regarding specified Issue II, as a matter of law, there was no "conviction" until the time of the second convening authority action on August 13, 1998. *See United States v. Foecking,* 22 USCMA 46, 50, 46 CMR 46, 50 (1972).

Nevertheless, I doubt that Article 57(a)(1), Uniform Code of Military Justice, is dispositive. *See Dock v. United States,* 46 F.3d 1083 (Fed.Cir.1995). Our case law concerning Article 75, UCMJ, suggests the opposite. *See Keys v. Cole,* 31 MJ 228 (CMA 1990). In any event, appellant's claim to restored pay should be brought before the United States Court of Federal Claims. *Id.; see United States v. Allen,* 33 MJ 209, 215 (CMA 1991), *cert.·denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).