# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, A.C. RUGH, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

**v.**

**BRANDON J. BROWN**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201300181**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 31 March 2015.
**Military Judge:** LtCol D.M. Jones, USMC.
**Convening Authority:** Commanding General, 2d Marine Aircraft Wing, II Marine Expeditionary Force, Cherry Point, NC.
**Staff Judge Advocate's Recommendation:** Col J.J. Murphy, USMC.
**For Appellant:** Capt Daniel Douglass, USMC.
**For Appellee:** LCDR Robert Miller, JAGC, USN.

**31 March 2016**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

CAMPBELL, Judge:

This case is before us a second time. In 2012, general court-martial officer and enlisted members convicted the appellant of making a false official statement, committing an assault consummated by a battery, communicating a threat, and wrongfully possessing two firearms under 18 U.S.C. § 922(g)(9)[1] (the Lautenberg Amendment), in violation of Articles 107, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 928, and 934. On 30 June 2014—

---

[1] 18 U.S.C. § 922(g)(9), commonly known as the "Lautenberg Amendment," is part of the 1996 amendment to the Gun Control Act of 1968, 18 U.S.C. §§ 921-930. It criminalizes possession of firearms or ammunition by those previously convicted of misdemeanor domestic violence offenses and has no military service member exception.

after the convening authority (CA) had approved the adjudged sentence of 15 years' confinement, reduction to pay grade E-1, 12 months of total forfeiture of pay and allowances, and a dishonorable discharge—this court set aside the findings and sentence and authorized a rehearing. The Judge Advocate General returned the case to the CA on 16 July 2014. The CA ordered a rehearing on 21 July 2014.

On 31 March 2015, a military judge sitting as a general court-martial convicted the appellant, this time pursuant to his pleas, of assault consummated by battery and two Lautenberg Amendment offenses, in violation of Articles 128 and 134, UCMJ.[2] The CA approved the adjudged sentence of total forfeiture of pay and allowances, confinement for two years, reduction to pay grade E-1, and a bad-conduct discharge.

The appellant now raises four assignments of error (AOEs): (1) after concluding that the appellant was improperly paid as an E-1 pending rehearing, the military judge abused his discretion in awarding confinement credit instead of ordering corrective pay or abating the proceedings; (2) the appellant's wrongful weapon possession pleas were improvident; (3) the sentence was too severe; and (4) the military judge abused his discretion in allowing major changes to two original trial specifications over defense objections.[3] Having carefully considered the record of trial, the parties' submissions, and their oral arguments on the first and second AOEs, we conclude the findings and sentence are correct in law and fact and find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

**Background**

At his January 2011 initial appearance in a North Carolina District Court, the appellant waived his right to counsel and elected to represent himself in contesting allegations of assaulting his then-five-month pregnant wife. In March 2011, a judge convicted him of a misdemeanor assault on a female, in violation of N.C. GEN. STAT. § 14-33(c)(2).

The North Carolina Constitution provides no right to a jury trial for misdemeanor crimes in the court of first instance. N.C. CONST. art. 1, § 24. Consequently, North Carolina District Courts exercise exclusive, original jurisdiction over misdemeanor crimes in judge alone trials. N.C. GEN. STAT. §§ 7A-196, 7A-272. However, state law allows appeal to a Superior Court for a *de novo* jury trial. N.C. GEN. STAT. § 7A-196. The appellant did not appeal his North Carolina conviction.

In June 2012, following additional reports of domestic violence, and almost immediately after a brief confinement by civil authorities, the appellant was placed in pretrial confinement. Two handguns with loaded magazines and additional ammunition were discovered in the car that the appellant drove to base on the day he was arrested.

---

[2] After findings the military judge consolidated Specifications 2 and 3 of Charge V: "In that [appellant] . . . having been convicted of a misdemeanor crime of domestic violence, did . . . wrongfully possess firearms, to wit: a Rock Island Armory M1911-A1FS .45 caliber pistol, serial number RIA1359941, and a Walther PK .380 pistol, serial number PK030653, in violation of 18 U.S. Code Section 922(g)(9) . . . which conduct was of a nature to bring discredit upon the armed forces and prejudicial to good order and discipline in the armed forces."

[3] The fourth AOE is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

The court-martial sentence sentence and Article 58b, UCMJ, resulted in the appellant's confinement without pay before his original findings and sentence were set aside. He remained confined pending the rehearing and his enlistment period did not end until after the rehearing.[4] However, he was paid at the E-1 pay grade from 16 July 2014 through his new convictions.

In September 2014, trial counsel made pen and ink changes to the wrongful weapon possession specifications, adding the phrase, "in or affecting interstate or foreign commerce." The modified specifications were then considered at an Article 32, UCMJ hearing, and were re-referred to general court-martial before the appellant was arraigned in November 2014.

Along with detailed military counsel, a civilian defense counsel (CDC) represented the appellant at the Article 32 hearing, as a pretrial agreement signatory, and during all but the final court session when the appellant pled guilty and was sentenced. The CDC's representation included pretrial motions sessions litigating, to at least some degree, the first, second and fourth AOEs. Citing the appellant's inability to compensate him, the CDC ultimately withdrew representation less than two weeks before the appellant's guilty pleas.[5]

**Analysis**

## I. *Abuse of Discretion in the Illegal Punishment Remedy*

The military judge partially granted defense motions related to the first AOE. Applying *Keys v. Cole*, 31 M.J. 228 (C.M.A. 1990) and *United States v. Combs*, 47 M.J. 330 (C.A.A.F. 1997), he interpreted Article 75(a), UCMJ, as entitling the appellant to pay at the grade held before the first trial's findings and sentence. He acknowledged this view of the law conflicted with the interpretation of Article 75(a) held by the United States Constitution, Article III courts specifically designated jurisdiction over government pay claims. Nonetheless, he held that a punitive effect resulted from pay officials' stated efforts to follow the Article III courts' interpretation—as reflected in *Dock v. United States*, 46 F.3d 1083 (Fed. Cir. 1995) and *Combs v. United States*, 50 Fed. Cl. 592 (Fed. Cl. 2001). The military judge ultimately awarded 516 days of additional confinement credit pursuant to Article 13, UCMJ, for the illegal pretrial punishment of not paying the appellant as an E-5 for the 258 days he was pending rehearing.

But the military judge rejected arguments that reduced pay improperly infringed upon the appellant's right to counsel and ability to hire experts. He also found that he lacked authority to issue a court order for the appellant's pay at a higher grade or for back-pay pending rehearing. Unable to issue the appellant's requested order that would potentially justify additional relief for Government non-compliance, the military judge denied his request to abate the proceedings.

The appellant argues that it was an abuse of discretion for the military judge to refuse to abate the proceedings in a decision relying upon an erroneous view of the law regarding judicial authority to order the Government to provide pay at a specific grade. He further contends that it was an abuse of discretion for the military judge to award 516 days of pretrial punishment

---

[4] The appellant reenlisted on 2 September 2010 for four years and 11 months.

[5] Appellate Exhibit XXXVII.

confinement credit as a remedy that ultimately provided no meaningful relief—the total credits applied against adjudged confinement resulted in the appellant's release following trial with 810 days of excess confinement credit.[6]

### a. Abatement

We review the military judge's ruling on the defense motion to abate proceedings for an abuse of discretion. *United States v. Monroe*, 42 M.J. 398, 402 (C.A.A.F. 1995). A military judge abuses his discretion when his "findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala,* 43 M.J. 296, 298 (C.A.A.F. 1995).

We find that the military judge's findings of fact related to his decision to not abate proceedings are supported by the record and not clearly erroneous. We adopt them. Having reviewed his conclusions of law in this regard, we also find no error.

A military judge may abate proceedings for Government failures to take actions requested by the defense when the military judge orders those actions and the failures have due process implications. *See* RULES FOR COURTS-MARTIAL 703(c)(2)(D) (failure to produce ordered lay witnesses), 703(d) (failure to produce ordered expert witnesses), and 704(e) (failure to immunize ordered witnesses), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).[7] But the Tucker Act, 28 U.S.C. § 1491, exclusively confers jurisdiction to the United States Court of Federal Claims for claims against the United States exceeding $10,000.00, and the Little Tucker Act, 28 U.S.C. § 1346, grants concurrent jurisdiction to the Court of Federal Claims and United States District Courts for claims under $10,000.00. Consequently, military courts have no jurisdiction to issue orders directing Government pay officials in the execution of their independent, statutory, fiscal responsibilities. *See United States v. Fischer*, 61 M.J. 415, 421 (C.A.A.F. 2005); *Keys*, 31 M.J. at 234; and *United States v. Shelton*, 53 M.J. 387, 391 (C.A.A.F. 2000) (Sullivan, J., concurring in the result). Thus, we find the military judge did not abuse his discretion in denying the requested order or in not abating the proceedings.

### b. Meaningful Relief

Separate from the sentence appropriateness analysis required in every case, and discussed *infra*, in cases involving Article 13, UCMJ, violations, we also review for meaningful relief as a question of law *de novo*. *United States v. Zarbatany*, 70 M.J. 169, 177 (C.A.A.F. 2011). Meaningful relief is required, "provided such relief is not disproportionate in the context of the case, including the harm an appellant may have suffered and the seriousness of the offenses of which he was convicted." *Id*.

---

[6] The appellant was credited with 1,540 days of confinement, consisting of 1,023 days of pretrial confinement, one day under RULE FOR COURTS-MARTIAL 305(k), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), and 516 days for illegal pretrial punishment from 16 July 2014 through 30 March 2015. Record at 293-97; General Court-Martial Order No. W15-18 of 30 Jun 2015 at 5.

[7] In different due process contexts, a military judge may abate proceedings for unavailable witnesses or evidence under R.C.M. 703, and abatement *ab initio* is required when an appellate dies during the trial or before completion of mandatory appeal. *See United States v. Ribaudo*, 60 M.J. 691, 694 (N.M.Ct.Crim.App.. 2004) (*en banc*), *aff'd*, 62 M.J. 286 (C.A.A.F. 2006).

The appellant's pretrial confinement alone far exceeds his adjudged confinement.[8]  In discussing the pretrial agreement's ultimate impact, the military judge overtly indicated that the adjudged sentence did not reflect any consideration of illegal pretrial punishment.[9]  So the appellant asks us to set aside his convictions as appropriate relief related to the additional confinement credit awarded at trial.  While the approved total forfeitures, reduction to pay grade E-1, and bad-conduct discharge are all sentencing elements against which meaningful relief might also apply, we consider any such relief disproportionate to both the seriousness of the appellant's conviction offenses and the harm he suffered.

### 1. *Seriousness of the Offenses*

The appellant was convicted of domestic violence by hitting his wife with a door and then continuing to assault her with his hands and feet while she was on the floor.  Sentencing evidence indicated he had engaged in seven other incidents of spousal abuse between November 2008 and June 2012 in addition to the incident that resulted in his previous North Carolina conviction.[10]  His Lautenberg Amendment violations contravene requirements established as Congressional efforts to prevent potential incidents of escalated domestic violence by previously convicted abusers.  *See United States v. Castleman*, 134 S. Ct. 1405, 1408-1409 (2014) ("Recognizing that '[f]irearms and domestic strife are a potentially deadly combination,' . . . Congress forbade the possession of firearms by anyone convicted of 'a misdemeanor crime of domestic violence.' . . . '[A]ll too often . . . the only difference between a battered woman and a dead woman is the presence of a gun.'") (citations omitted)).  Setting aside any of the appellant's court-martial convictions or the punitive discharge is not warranted in this context.

### 2. *Harm the Appellant Suffered*

As to the nature of the harm, the appellant's E-1 pay did not prejudice the conduct of a fair trial.  The military judge correctly noted, "[t]he government bears no financial responsibility to ensure that the [appellant] has enough money to hire a civilian counsel at his own expense.  See R.C.M. 506(a)."[11]  With no constitutional right to hire a civilian attorney, the appellant's appointed military counsel met the legal requirements for representation.  *See Keys*, 31 M.J. at 234.  And even if a right to Government-paid civilian defense counsel existed, the specific circumstances under which the appellant released his CDC would clearly demonstrate no prejudice occurred since that release expressly did not impact the appellant's decision to plead guilty or his confidence in his detailed military counsel's ability to represent him during the guilty plea.[12]  Similarly, and consistent with the Article 46, UCMJ, requirement for equal opportunity to obtain witnesses, R.C.M. 703(d) provides the mechanics of employing expert

---

[8] Before sentencing, the appellant was in confinement for 1,023 days between12 June 2012 and 30 March 2015.

[9] "[H]owever much confinement credit I gave or how much *Allen* credit you did, did not consider into my awarding the sentence.  I just gave the sentence I thought was appropriate."  Record at 472.

[10] Prosecution Exhibit 2.

[11] AE XV at 15 n.33.  *See also* Art 38(b)(2), UCMJ.

[12] Record at 272-74.

defense witnesses at Government expense.  Finally, although paid as an E-1, since the appellant wore sergeant rank insignia outside of the brig during each court appearance, his pay had no impact on the presumption of his innocence.  *See Bell v. Wolfish*, 441 U.S. 520, 533 (1979) ("The . . . presumption of innocence . . . has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun."); *United States v. Cruz*, 25 M.J. 326, 329 (C.M.A. 1987) (even with unlawful command influence and punitive intent towards co-accuseds, "there was no direct or indirect attempt to orchestrate the findings portion of their courts-martial. . . .  Moreover, appellant pleaded guilty to the charged offenses, and he makes no particular complaint that his defense on the findings was in any way impaired.  In this context, the findings of guilty may be affirmed.") (Citations omitted)).

So any further relief on these grounds must be measured against what the appellant actually suffered—financial harm.  Unlike *United States v. Combs*, the military judge found that the appellant here was not paid less pursuant to any punitive intent.  There were no indignities beyond the appellant's direct deposits, as he was lawfully held in pretrial confinement and otherwise treated as properly as any sergeant under those circumstances.[13]  Assuming, without deciding, that the military judge had the authority to resolve conflicting interpretations of Article 75(a), UCMJ, by finding illegal pretrial punishment based on a punitive effect, the nearly strict liability nature of such an Article 13, UCMJ, violation on the part of any Department of Defense officials places it on the less severe end of the pretrial punishment spectrum.

Considering the nature and overall context of the Article 13 violations found here, including the unsettled relationship between the Court of Appeals for the Armed Forces (CAAF) and Article III court precedent, additional relief is not warranted under Article 66(c), UCMJ.  *See United States v. Harris*, 66 M.J. 166, 169 (C.A.A.F. 2008) (holding that despite no pending confinement against which previously awarded credits could be applied, any relief would be disproportionate to the harm suffered).  Our decision does not limit the appellant's ability to pursue improper pay claims at venues more appropriate than this court-martial.[14]  *See United States v. Allen*, 33 M.J. 209, 215 (C.M.A. 1991); *Keys*, 31 M.J. at 234; and  *Shelton*, 53 M.J. at 391 (Sullivan, J., concurring in the result), and 392 (Gierke, J., concurring in part and in the result and dissenting in part).

## II.  *Providence of Pleas*

The appellant argues that the military judge failed to define predicate domestic violence convictions, and that it is unclear whether the 2011 North Carolina conviction discussed during the providence inquiry is actually a Lautenberg Amendment qualifying conviction.

---

[13] With the exception of his pretrial confinement review hearing occurring on the eighth day after the CA ordered a rehearing, for which he received one day of R.C.M. 305k credit.

[14] Pursuant to 31 U.S.C. § 3702(a), the Secretary of Defense established the Defense Office of Hearings and Appeals (DOHA), which processes pay claims in accordance with Department of Defense Instruction 1340.21 (May 12, 2004).  If DOHA officials reached the same conclusions as DFAS regarding the appellant's pay entitlements, or if he chose to by-pass DOHA in favor of a more direct legal redress, the Court of Federal Claims possesses both the jurisdiction and remedies under the Tucker Act which the military judge and this court lack.

The decision to accept a guilty plea is reviewed for abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). Failure to obtain an adequate factual basis from an accused to support the plea and any ruling based on an erroneous view of the law constitutes an abuse of discretion. *Id.* (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)). We set aside a voluntary guilty plea only if the record as a whole shows "with regard to the factual basis or the law," there is something "that would raise a substantial question regarding the appellant's guilty plea." *Id.* The appellant has the burden to demonstrate such a basis. *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004). The "mere possibility" of a conflict between the plea and the accused's statements or other evidence in the record "is not a sufficient basis to overturn the trial results." *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007) (internal quotation marks and citations omitted).

Based upon a thorough providence inquiry and the parties' trial stipulation, the military judge obtained an adequate factual basis to support Lautenberg Amendment violations as a Clause 3, Article 134, UCMJ, offense. When asked to explain his guilt for the first alleged Lautenberg Amendment violation,[15] the accused's lengthy response began with his state domestic violence conviction:

> Sir, I'm guilty of this offense because I'm not permitted to possess or own firearms due to my prior domestic violence conviction. I know that this prohibited me from possessing firearms because [the person he had approached about one of the two hand guns at issue, and from whom his wife later purchased that weapon] explained to me when I attempted to buy the 1911 from him. But I realize that it doesn't even matter what I knew. My prior conviction prohibits me from possessing firearms period.[16]

Portions of the subsequent colloquy further discussed the state domestic violence conviction:

> MJ: Did you know that you had been convicted of a crime of misdemeanor – a misdemeanor crime of domestic violence?
> A: Yes, sir.
> MJ: You were actually at the hearing and knew that you had a conviction?
> A: Yes, sir.
> MJ: What was the date of that again, the first conviction of that?
> A: 11 March 2011, sir. I'm sorry[,] 16 March 2011.
> MJ: And that was in, if I remember correctly, Onslow County?
> A: Onslow County, Jacksonville, North Carolina, sir.
> MJ: And that was – there's nothing wrong with the conviction other than you may not have liked it. But what I mean was, it was a proper court and you got convicted by somebody?

---

[15] The military judge initially explained to the appellant that the third element of Specifications 2 and 3 under Charge V required evidence beyond a reasonable doubt, "that before you possessed the firearm you were convicted in a court of a misdemeanor crime of domestic violence[.]" Record at 336-37. He then defined the following terms, applicable to both specifications: possess, service discrediting conduct, conduct prejudicial to good order and discipline, knowingly, interstate commerce, and foreign commerce.

[16] *Id.* at 341.

A:    Yes, sir.
MJ:   A judge or somebody?
A:    Yes, sir.[17]

. . . .

MJ:   Were you, in fact, convicted of a crime of domestic violence?
A:    Yes, sir.
MJ:   And that's what you told me about it. It was 2011 in Onslow County, correct?
A:    Yes, sir.[18]

. . . .

MJ:   On page one of your stipulation of fact, it indicates that for an assault on a female on 16 March 2011 you were tried by a district court judge – okay. Earlier I might have said you didn't testify. I'm very sorry if I misspoke. Sergeant [E.B] did not testify at the trial. The judge found you guilty. Sentenced you as it indicates. Is all that accurate?
A:    Yes, sir.[19]

But "an otherwise perfect providency colloquy" may yield an improvident plea if there is a "fundamental definitional error." *Negron*, 60 M.J. at 142. In *Negron*, the military judge erroneously used "the definition of 'indecent acts' to evaluate Appellant's alleged 'indecent language'" during a guilty plea for placing obscene material in the mail. *Id.* The CAAF held "this definitional error . . . tainted the entire providency inquiry," causing "focus . . . on the indecent nature of the acts that were the subject of Appellant's language [in a mailed letter] rather than [the] 'planned' and 'intended' result from use of his language." *Id.* (citation omitted).

While not claiming incorrect definitions here, the appellant asserts a deficiency in the military judge's failure to define qualifying convictions under 18 U.S.C. § 921(a)(33)(B)(i)(II)[20] and specifically address with him the potential for a jury trial in his North Carolina misdemeanor case. He also contends his state conviction is not a predicate offense for Lautenberg Amendment purposes, since he did not knowingly and intelligently waive his right on appeal to a *de novo* jury trial—despite never filing a notice of appeal. We hold, instead, that the record of trial enabled both the military judge and this court to decide, as a matter of law, that the appellant's North Carolina domestic violence conviction is a predicate offense under the Lautenberg Amendment.

In *United States v. Artis*, 132 Fed. Appx 483 (4th Cir. 2005), the United States Court of Appeals for the Fourth Circuit addressed arguments that a Virginia District Court misdemeanor

---

[17] *Id.* at 345-46.

[18] *Id.* at 350.

[19] *Id.* at 350-51.

[20] It provides that a domestic violence misdemeanor conviction does not qualify for Lautenberg Amendment purposes unless, "in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either (aa) the case was tried by a jury, or (bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise."

8

domestic violence conviction was not a Lautenberg Amendment predicate conviction since Virginia, like North Carolina, affords a right to a jury on appeal. The *Artis* court initially determined that "whether a prior misdemeanor conviction for domestic violence qualifies [for Lautenberg Amendment purposes] . . . is a question of law for the court to decide" and "that the district court did not err by . . . prevent[ing] the issue from going to the jury." *Id.* at 484 (citations omitted). It further determined "that [the appellant] was not entitled to a jury trial as a matter of law" since, again like North Carolina, there was no right to a jury trial in the Virginia District Court where he was convicted, and "he did not invoke his right to a jury trial in a Circuit Court of Appeals because he failed to file a notice of appeal." *Id.* at 485 (citations omitted).

The appellant may be the first in a court-martial context to argue that the right to a jury on appeal in a prior state prosecution, in and of itself, disqualifies an otherwise valid conviction from a bench trial-only lower court for Lautenberg Amendment purposes. But his argument is far from novel. *See United States v. Gordon*, 264 Fed.App'x 274 (4th Cir. 2008) (per curiam); *United States v. Stanko*, 491 F.3d 408 (8th Cir. 2007); *United States v. Bethurum*, 343 F.3d 712 (5th Cir. 2003); *United States v. Holbrook*, 613 F. Supp. 2d 745 (W.D. Va. 2009); and *United States v. Combs*, 2005 U.S. Dist LEXIS 35406 (D. Neb 2005). It is also as unpersuasive here as it has been in other jurisdictions. Despite the military judge in this case having not provided definitions related to these matters of law during the providence inquiry, there is no substantial basis in law or fact for questioning the appellant's Lautenberg Amendment guilty pleas.

## III. *Sentence Appropriateness*

We conduct *de novo* review for sentence appropriateness, *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006), which "involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). It requires our "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (internal quotation marks and citation omitted). Despite our significant discretion in reviewing the appropriateness and severity of the adjudged sentence, we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146-47 (C.A.A.F. 2010).

Partially for the reasons discussed *supra* regarding the second AOE, the appellant's argument here that his sentence should only include a reduction to the pay grade of E-4 is also unpersuasive. With individualized consideration of the appellant, the nature and seriousness of his offenses, his overall record of service, and all the matters within the record of trial, we find the CA approved an appropriate sentence.

## IV. *Improper Referral*

The appellant withdrew his second motion to dismiss for improper referral of the Article 134, UCMJ, specifications alleging Lautenberg Amendment violations (the military judge having denied the first motion), and then pled guilty to the offenses. As part of the pretrial agreement, he specifically agreed "to withdraw any prior objection . . . [and] to not raise any additional motions related to . . . [r]elief pursuant to R.C.M. 603 for modifications to any charge or

specification."[21]  Thus, waiver applies.  Even if it did not, this AOE lacks merit.  The Government may correct charges before arraignment, and arraignment is part of the procedure in a full rehearing.  *See United States v. Staten*, 45 C.M.R. 267, 269 (C.M.A. 1972).

## Conclusion

The findings and sentence as approved by the convening authority are affirmed.

Senior Judge FISCHER and Judge RUGH concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[21] AE XXXVIII at 4.