Todd A. DOCK, Plaintiff/Cross–Appellant,

v.

The UNITED STATES, Defendant/Appellant.

Nos. 93–5112, 93–5125.

United States Court of Appeals, Federal Circuit.

Jan. 27, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied March 9, 1995.

William J. Holmes, Atty. at Military Law, Virginia Beach, VA, argued, for plaintiff/cross-appellant.

Sean P. Murphy, Trial Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for defendant-appellant. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and James M. Kinsella, Asst. Director. Also on the brief were Lt. Col. W. Gary Jewell and Cpt: Flora D. Darpino, Dept. of the Army, Office of the Judge Advocate Gen., Arlington, VA. Of counsel was Nolon J. Benson, Jr.

Before PLAGER, LOURIE, and SCHALL, Circuit Judges.

PLAGER, Circuit Judge.

Todd Dock, a private in the Army, was convicted by court-martial of murder. His sentence included forfeiture of all pay and allowances. The conviction and sentence were set aside on appeal, and remanded for rehearing. He was convicted a second time, and resentenced. The second sentence again included forfeiture of all pay and allowances. This case requires us to determine whether Dock is entitled to restoration of the pay and allowances withheld as a consequence of the first, but defective, trial.

The Court of Federal Claims granted Dock restoration of part of his pay and allowances, but denied it for the remainder. *Dock v. United States,* 27 Fed.Cl. 62 (1992) (*Dock*). The United States appeals the first part of the judgment of the Court of Federal Claims; the soldier cross-appeals the second part.

We conclude that under the statutes and applicable regulations Dock is not entitled to restoration of any of his pay and allowances. The judgment of the Court of Federal Claims is reversed-in-part and affirmed-in-part.

## BACKGROUND

Todd A. Dock was a Private First Class, E–3, stationed in Germany. After drinking wine one evening with his roommate, he conceived of a plan to rob a taxi driver; in the course of the robbery he killed the driver. Dock was caught, tried and, after pleading guilty to robbery and unpremeditated murder, convicted in a general court-martial and sentenced to demotion to the rank of E–1, dishonorable discharge, forfeiture of all pay and allowances, and death. The issue litigated in his court-martial was not whether he had committed the offense, but whether the killing was premeditated. For a full account, see *United States v. Dock*, 26 M.J. 620 (A.C.M.R.1988); *United States v. Dock*, 35 M.J. 627 (A.C.M.R.1992).

Subsequent to his conviction, an appeal was taken on Dock's behalf. It was argued that allowing him to plead guilty to both a felony, the robbery, and the ensuing killing, regardless of whether the killing was premeditated, made him subject to the felony-murder rule for which death was a possible sentence. Since military law precludes a plea of guilty to a capital offense, see 10 U.S.C. § 845(b),[1] Dock argued his conviction was improper. On August 28, 1986,[2] while he was in prison awaiting the outcome of his appeal, Dock's term of enlistment expired. The Army retained Dock as the Uniform Code of Military Justice (UCMJ) authorizes it to do.[3] On May 10, 1988, the Army Court of Military Review, in a divided en banc

opinion, agreed with Dock's appeal, set aside both the findings of guilty and the sentence of the trial court, and ordered that Dock's case be reheard. *United States v. Dock*, 26 M.J. 620. The decision of the Court of Military Review was affirmed by the United States Court of Military Appeals on May 8, 1989. *United States v. Dock*, 28 M.J. 117 (C.M.A.1989).

On November 17, 1989, after the rehearing of his case, Dock was again found guilty by court-martial, and sentenced to demotion to the rank of E–1, dishonorable discharge, forfeiture of all pay and allowances, and life imprisonment. The convening authority approved the conviction and ordered the forfeiture executed on June 21, 1990. That judgment has been affirmed by the Army Court of Military Review, *United States v. Dock*, 35 M.J. 627.[4]

On December 2, 1991, Dock sued in the Court of Federal Claims seeking restoration of the pay and allowances previously withheld from him. On November 2, 1992, the Court of Federal Claims granted partial summary judgment in favor of Dock. The court ruled:

1. The initial court-martial sentence, having been set aside, was invalid and Dock was entitled to the pay and allowances accruing to him up to the time (August 28, 1986) his enlistment expired. *Dock*, 27 Fed.Cl. at 65–66.

2. From the date his enlistment expired until the date his initial conviction was finally set aside on appeal (May 8, 1989), Dock was entitled to his pay and allowances—he was being held for the convenience of the government, and, absent a regulation to the contrary, the government is obligated to pay him. *Id.* at 67.

---

1. Unless otherwise noted, all citations are to the 1988 edition of the United States Code.

2. The Court of Federal Claims states the date to be August 28, 1986. The Government in its brief states it was August 29. The discrepancy is not significant to the decision; for continuity we use the trial court's date.

3. The Uniform Code of Military Justice applies only to certain persons. *See* 10 U.S.C. § 802(a)(7) (making persons serving court martial sentences subject to the Code). "The United

States Government does have the right to retain a member of the armed forces after his term of enlistment if he is accused of or has committed an act which subjects him to a court-martial." *Cowden v. United States*, 600 F.2d 1354, 1357, 220 Ct.Cl. 490 (1979).

4. Dock has further appealed to the United States Court of Military Appeals. We need not and do not offer any views on the merits of Dock's claim should the Court of Military Appeals disagree with the Army Court of Military Review.

3. For the period from the time his initial conviction was finally set aside on appeal until the time his second sentence of forfeiture was approved and ordered executed (June 21, 1990), Dock was being retained for retrial, and under existing regulations was not entitled to pay and allowances unless he was acquitted, which he was not. *Id.* at 67–68.

As noted, both the Government and Dock are dissatisfied with that outcome. The United States argues in its appeal that Dock is not entitled to any back pay; Dock cross-appeals, arguing that he is entitled to back pay for the entire period between the date pay was first withheld under the initial (and later voided) court-martial conviction to the date the second court-martial sentence was approved, which includes the period he was retained awaiting rehearing.

## STANDARD OF REVIEW

There are no facts in dispute. The appeal turns on the interpretation of statutes, regulations, and case law, which this court undertakes without deference to the trial forum.

## DISCUSSION

As can be seen, the trial judge considered the case to be analytically separated into three distinct time frames. It may be helpful at the outset to present a time-line table:

| | | |
|---|---|---|
| 8/29/83 | – Dock enlists. | |
| 6/12/84 | – Dock murders the taxi driver. | |
| 11/16/84 | – Initial court-martial conviction. | |
| 2/5/85 [5] | – Convening authority approves conviction and orders forfeiture executed. Pay and allowances cease. | I. |
| 8/28/86 | – Dock's enlistment expires. | ——— |
| 5/10/88 | – Court of Military Review sets aside conviction and sentence. | II. |
| 5/8/89 | – Court of Military Appeals affirms decision of Court of Military Review. | ——— |
| 11/17/89 | – Second court-martial re-convicts Dock; sentence includes forfeiture of pay and allowances. | III. |
| 6/21/90 | – Convening authority approves second conviction and orders forfeiture executed. | ——— |
| 7/31/92 | – Court of Military Review affirms. | |

■ Three general principles of military law provide the framework for the decision in this case. First, the rights and benefits of a member of the military services, including pay and allowances, are defined by statute. *See* 37 U.S.C. § 204(a)(1) (a member of a uniformed service on active duty is entitled to pay). "Preliminarily, it is to be observed that common-law rules governing private contracts have no place in the area of military pay. A soldier's entitlement to pay is dependent upon statutory right." *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961) (*Bell*). A member's pay is defined by act of Congress and is not a *quid pro quo* for services rendered to the military.

■ Second, by law once a member's pay has accrued it cannot be forfeited by court-martial. Article 57(a) of the Uniform Code of Military Justice provides that: "No forfeiture may extend to any pay or allowances accrued before the date on which the sentence is approved...." 10 U.S.C. § 857(a). *See Bell,* 366 U.S. at 401–02, 81 S.Ct. at 1235–36; *Dickenson v. United States,* 163

5. The Court of Federal Claims states the date to be February 5, 1985. Documents in the record indicate it was February 14. Again, the discrepancy is not significant to the decision.

Ct.Cl. 512, 1963 WL 8493 (1963) (a service member's enlistment had expired while he was held captive by the North Koreans and before he was confined to await trial by court-martial; the court found him to be entitled to receive his pay and allowances); *see also Jagnandan v. United States*, 17 Cl.Ct. 107, 115 (1989), *aff'd*, 897 F.2d 538 (Fed.Cir.1990) (table).[6]

■ Third, forfeiture of future pay "can only be imposed by the sentence of a lawful court-martial." *Walsh v. United States*, 43 Ct.Cl. 225, 231, 1907 WL 842 (1908); *see also Bell*, 366 U.S. at 401–02, 81 S.Ct. at 1235 ("But a soldier who has not received such a punishment from a duly constituted court-martial is entitled to the statutory pay and allowances of his grade and status, however ignoble a soldier he may be."); *Rhoades v. United States*, 668 F.2d 1213, 1216, 229 Ct. Cl. 282 (1982).

■ In the context formed by these rather general principles of military law, Congress enacted the more specific Article 75(a) as part of the Uniform Code of Military Justice, now codified at 10 U.S.C. § 875(a).[7] Article 75(a) provides:

> Under such regulations as the President may prescribe, all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved, except an executed dismissal or discharge, shall be restored *unless a new trial or rehearing is ordered and such executed part is included in a sentence imposed upon the new trial or rehearing.* (Emphasis added.)

Dock argues, and the trial court agreed, that in enacting Article 75(a) Congress did not intend what the statute seems to say, that a forfeiture decreed in a prior but overturned conviction could be effectively reinstated in a later conviction. The trial court explained: "what the statute does is to rec-

ognize that restoration of benefits, though obligatory, may be accomplished by *crediting* against the second sentence the *executed* portion of the invalidated first sentence." *Dock*, 27 Fed.Cl. at 65 (emphasis in original). "In short, the statute deals with the mechanics of restoration; not with the prohibition of restoration." *Id.*

This reading of Article 75(a) is simply wrong. Article 75(a) is not, as the trial court and Dock would interpret it, a statute that deals with the mechanics of restoration. To the contrary, Article 75(a)—by its own terms and, as will be discussed below, consistent with its legislative history—is a statute that deals with entitlement to pay. In a case in which a *partial* forfeiture is imposed after rehearing, the question may arise of crediting what was previously withheld against what is now due the Government. That could be viewed as a question of "the mechanics of restoration." That is not an Article 75(a) question, however. Rather, that is a question of application of the regulations which govern the mechanics of restoration.[8]

The statute plainly requires that, with two exceptions, if a member's court-martial sentence is set aside or disapproved, all rights, privileges, and property are to be restored to the member. The first exception is that a set-aside or disapproved sentence does not undo an already executed dismissal or discharge. The second exception, controlling here, is that if a rehearing is ordered, and the member is resentenced, then only that part of the executed first sentence that is *not* included in the second sentence shall be restored to the member.

The legislative history leaves no doubt that this is what Congress understood the statute to mean:

> This article is new in that restoration of rights, privileges, and property is manda-

---

6. *See also* Claim of Major Herod, 13 Op.Att'y Gen. 103, 104 (1869):

> The sentence that he be hung necessarily implied a dismissal from the service, but not, as it seems to me, the forfeiture of back pay.... The monthly pay of officers of the Army is prescribed by statute, and so long as a person is an officer of the Army he is entitled to receive the pay belonging to the office, unless

he has forfeited it in accordance with the provisions of law....

7. Uniform Code of Military Justice, ch. 169, § 1 (Art. 75), 64 Stat. 132 (May 5, 1950).

8. *See* Department of Defense Pay and Entitlements Manual ¶ 70509b(1).

tory and in that restitution of forfeitures previously collected is authorized. If a new trial or rehearing is ordered, restoration is to be made in regard to such part of the original sentence as is not adjudged upon the new trial or rehearing.

S.Rep. No. 486, 81st Cong., 1st Sess. 2222, 2257–58 (1949) (regarding Article 75 of the Uniform Code of Military Justice; repeating in substance H.Rep. No. 491, 81st Cong., 1st Sess. (1949)). The Senate report makes clear that a forfeiture ordered by court-martial and subsequently found to be erroneous is to be restored, except that, in a situation in which a rehearing is ordered, no restoration is called for until the outcome of the rehearing is known, and then only to the extent the forfeiture is not reimposed. Our understanding of Article 75(a) is consistent with that of the Court of Military Appeals, see *Keys v. Cole,* 31 M.J. 228 (C.M.A.1990), and the Comptroller General of the United States, see *Matter of: Kenneth A. Glover,* 1992 WL 189193, 1992 U.S.Comp.Gen. Lexis 791, No. B–246495 (Comptroller General, July 29, 1992) (LEXIS Genfed library, Comgen file).

■ In the case before us, the second exception in the statute clearly applies—a member has been convicted and sentenced to total forfeiture of pay and allowances; the sentence has been executed; there has been a rehearing which resulted in a conviction and resentencing that included the same total forfeiture. Members have a statutory right to their pay, but that right is the creation of Congress, and it is subject to the conditions Congress chooses to put upon it. Congress has declared that no restoration is made if a rehearing reimposes the same forfeiture.

The basic principle seems straightforward enough. Yet there are several time frames in this case and a variety of factual nuances that require examination in the course of applying the principle. Accordingly, we address the specific time frames denominated earlier, the specific rulings of the trial judge regarding them, and the arguments of the parties.

## I.

*The period between approval of the initial conviction and the ordering into execution of the sentence regarding forfeiture (February 5, 1985), and the date on which Dock's enlistment expired (August 28, 1986).* The trial court was of the view that the initial court-martial sentence, having been set aside for legal error, was a total nullity and therefore Article 75(a) could not mean what it appears to say. Instead, the trial court strove to find some alternative explanation for the language, finally concluding, as we explained above, that it related to crediting against the second sentence the executed portion of the invalidated first sentence.

But as we have explained no such limited reading of the statute is warranted. The statute is quite plain on its face, and we are not free to ignore the Congressional command. Of course the trial judge is correct about the general ineffectiveness of an overturned sentence. In this case the reviewing military courts concluded that the guilty pleas when taken in combination constituted an admission of felony murder for which death could be the sentence, and that military law prohibited accepting a guilty plea under those circumstances. The ordering of a rehearing in the case had the effect of nullifying the conviction.

Yet the crime, the confession of guilt, and the ensuing court-martial were not without consequence. Congress has decreed in Article 75(a) that a forfeiture of pay ordered in a regularly-constituted court-martial and executed by competent authority, even though the order is found later to be legally defective, can be related back by a subsequent court-martial that imposes a sentence in which the executed part is included.

Dock cites the various statutory provisions, referred to earlier, which accord members of the military services the right to pay, and argues that these provisions contain no such specific exception. They need not. The words of Article 75(a) are all that is needed to bring about the result Congress prescribed therein.

■ In their briefs, the parties discuss at some length various Department of Defense

regulations and their possible significance to this time period. In a case in which the statutes themselves are not sufficiently clear, or in which the agency is given power by regulation to provide the answer, regulations may provide what is missing. But when the statutes provide a clear answer, the regulations cannot change it even if they purported to, which in this case they do not. By like token, Dock's argument that prior correspondence and other statements by government officials are inconsistent with the Government's position here, and indeed support Dock's case, are beside the point. It is axiomatic that government agents cannot bind the Federal Government to pay public funds in violation of positive law. *See, e.g., Office of Personnel Management v. Richmond,* 496 U.S. 414, 415–16, 110 S.Ct. 2465, 2466–67, 110 L.Ed.2d 387 (1990). Dock is not entitled to back pay for the period between approval of the initial conviction and the ordering into execution of the sentence regarding forfeiture, and the date on which Dock's enlistment expired (a date prior to the final judicial determination setting aside his initial conviction and sentence).

## II.

*The period between the end of Dock's enlistment (August 28, 1986), and the date that the setting aside of his initial conviction was affirmed by the Court of Military Appeals (May 8, 1989).* Regarding the period between the expiration of the enlistment and the date the Court of Military Appeals finally approved the setting aside of the initial conviction, the trial court concluded that Dock was entitled to his pay and allowances. *Dock,* 27 Fed.Cl. at 67. The court considered this result dictated by the decision of this court's predecessor in *Rhoades v. United States,* 668 F.2d 1213, 229 Ct.Cl. 282 (1982). The trial court viewed *Rhoades* as holding that "retention in service beyond the end of an enlistment term, pursuant to a court martial sentence later voided is (i) a retention for the convenience of the Government, and (ii) compensable in the absence of a regulation cutting off the right to pay." *Dock,* 27 Fed. Cl. at 67.

The facts in *Rhoades* are indeed parallel, although with something of a twist. Sergeant Rhoades, a United States Marine, was convicted by court-martial of killing a fellow Marine, and sentenced, *inter alia,* to forfeiture of all pay and allowances. The conviction was set aside on appeal (in his case because of a faulty instruction by the military trial judge). As directed by the reviewing court, a rehearing was held. Rhoades was convicted again, and his sentence again included a forfeiture of all pay and allowances.

The twist occurred as a result of the Marine Corps Finance Center deciding, apparently without prompting from Rhoades, to pay Rhoades his pay and allowances from the date of his first conviction until the date his enlistment expired. (Like Dock, his enlistment had expired while he was incarcerated and the various appeals were in process.) The twist became tighter when the Corps later informed Rhoades that he was actually entitled to his pay and allowances from the date of his first conviction until the date the convening authority approved his second conviction, a period including but larger than the period for which he had already received pay. Part of the additional sums were paid into Rhoades' prison account; then the Corps reviewed what it was doing and decided the additional payments were a mistake. A partial recoupment of the money was accomplished through the cooperation of the prison.

Rhoades, following his release from confinement, sued the United States for the pay and allowances withheld from him for the period between the expiration of his enlistment to the day before the convening authority approved his second sentence. The United States counterclaimed for the amounts it believed were still due it from the earlier alleged overpayment.

Although in many respects factually similar to Dock's case, legally the Rhoades case stands on different ground due to the differences in the issues presented to the court and in the statutes and regulations upon which the court relied. The argument presented in *Rhoades,* both at the trial and on appeal, turned primarily on the meaning of various provisions in the Department of De-

fense Pay and Entitlements Manual (DODPM). In particular, the Court of Claims focussed on ¶ 10316b(1) and (2), dealing with a service member's entitlement to pay after expiration of a term of service.

The court parsed the language of the regulations, and their applicability to each of the various time periods involved in Rhoades' case. The court concluded that the cited DODPM regulations were inapplicable on their terms, and concluded on the case as presented that Rhoades was entitled to recover his claimed back pay and allowances. *Rhoades,* 668 F.2d at 1216, 229 Ct.Cl. 282.

The statutory framework presented in our case differs materially from that in *Rhoades.* A review of the record in the *Rhoades* case indicates that neither Rhoades nor the Government relied upon or cited to the court Article 75(a) of the Uniform Code of Military Justice. In its argument here the Government explains this on the ground that in *Rhoades* the sentence of forfeiture had never been ordered executed, and therefore Article 75(a) would not apply. Prior to 1983, the UCMJ did not permit sentences which included a discharge or confinement for one year or more to be executed until after appellate review. Since amendment that year, other parts of a sentence, including forfeiture of pay and allowances, may be executed upon approval by the convening authority. *See* 10 U.S.C. § 871(c).

Whatever the case, the Court of Claims in *Rhoades* chose to decide the matter on the basis of the record and arguments presented; the opinion contains no reference to or discussion of Article 75(a).[9] The only statutory citation in the opinion is to Article 57(a), which, as previously noted, prohibits retroactive forfeitures, that is forfeitures imposed on pay earned prior to a court martial conviction. Since the parties have properly raised the question of the applicability of Article 75(a) to this case, and we find it importantly applicable, we conclude that *Rhoades* does not address that aspect of the issue before us, and therefore does not control the disposition of the matter.

Article 75(a) provides no basis for distinguishing between periods of confinement before and after the expiration of enlistment. The rule stated in that Article on its face applies equally to both periods. Since, as we have explained, Article 75(a) dictates the result in the pre-expiration period, it equally dictates the result in the post-expiration period. The sentence forfeiting all future pay, from February 5, 1985, onward, was executed after the first court-martial; that sentence of forfeiture, covering the same period, was reimposed after the second court-martial. Dock is entitled to no pay and allowances for this second period of confinement.

III.

*The period from the affirmance by the Court of Military Appeals of the decision to set aside Dock's initial conviction and sentence (May 8, 1989) to the date upon which the sentence of forfeiture in the second court-martial was ordered into execution (June 21, 1990).* For this period, the trial court held that Dock was not entitled to any pay or allowances. *Dock,* 27 Fed.Cl. at 68. The court reasoned that this was a period in which Dock was being held pending trial for a crime committed while in service. Citing *Gorko v. Commanding Officer, Second Air Force,* 314 F.2d 858 (10th Cir.1963), the court noted that this is "a period of involuntary service justified on the basis of the military's long-acknowledged right to retain a member for crimes committed while under the military's jurisdiction." *Dock,* 27 Fed.Cl. at 67. The Court of Federal Claims reasoned that whether pay and allowances ultimately are due turns on the outcome of the trial, and in Dock's case that outcome was negative to his entitlement.

In response, Dock argues that he remained "on duty" throughout this period, was neither in unauthorized absence nor deserter status, and was not lawfully sentenced to forfeiture of pay and allowances until the convening authority acted on June 21, 1990, that is, after the second court-martial. From this he concludes that he is entitled to receive full pay and allowances until that date because

---

9. Article 75(a) had been enacted in May 1950 as part of the original adoption of the UCMJ.

he was on active duty and was not subject to a valid sentence which included forfeitures.

Dock's argument is not without force. In *Keys v. Cole*, 31 M.J. 228 (C.M.A.1990), the United States Court of Military Appeals faced a factual situation virtually identical to that of Dock, except that the rehearing following the setting aside of the initial conviction had not yet been held. Petitioner Keys claimed pay and allowances withheld since the initial conviction. (The matter came before the Court of Military Appeals on a writ of mandamus, seeking an order for relief from the rehearing unless back pay was restored.)

The court analyzed the case in terms of two, rather than three, time periods. The first involved the return of forfeited pay, that is, pay that would have been due Keys from the time of the initial conviction until the date it was finally set aside (in this case by the Court of Military Review). The second involved pay pending rehearing, that is, the pay that would have been due Keys from the time his initial conviction was set aside to the time (in Keys' case, presumably sometime in the future) when the rehearing is held and a second sentence, if there is one, is executed.

With regard to the first period, the Court of Military Appeals concluded that Article 75(a) "quite clearly entitle[s] the United States to retain pay already withheld prior to the sentence being set aside, until such time as either a decision is made not to hold a rehearing or a rehearing is held." *Keys*, 31 M.J. at 232. That conclusion is fully consistent with our view of Article 75(a).

With regard to the second period—which raises the same issue as that in Dock's case regarding the period between the final overturning of the initial sentence and the imposition of the second—the court observed that an accused in pretrial confinement awaiting rehearing after the first sentence has been set aside in some ways is no different than an accused in confinement awaiting a first trial. If an accused is within his period of enlistment he is entitled to pay and allowances even though in confinement—no court-martial has yet effectively ordered a forfeiture.

But, the court noted, Keys was not within his period of enlistment; his enlistment had expired while he was being confined awaiting the results of his appeal from his initial conviction. The court then sifted through the various DOD regulations and found none conclusive of the issue; discussed the possible implications of the Court of Claims decision in *Rhoades* and decided it was unclear whether the decision reached by the court in *Rhoades* under the regulations then in effect would be the same as the court might reach under current regulations; and expressed some hesitation "to interpret military-pay regulations under circumstances where there is another court whose expertise is in that area of law." *Keys*, 31 M.J. at 234. Keys was instructed to pursue his claim of monetary entitlement in the United States Claims Court, now the Court of Federal Claims.

Dock of course did exactly that. As noted, the Court of Federal Claims denied Dock his pay and allowances while in confinement awaiting rehearing. The court found DODPM ¶ 10317c, previously discussed, to apply. Dock responded that, whatever the regulation said, he was entitled to pay during this period on the basis of 37 U.S.C. § 204(a)(1), the statute that authorizes basic pay according to grade and years of service to be paid "a member of a uniformed service who is on active duty." The court replied that "await[ing] trial by court-martial cannot be regarded as 'full-time duty in the active service,'" the definition of "active duty" found in 37 U.S.C. § 101(18). *Dock*, 27 Fed. Cl. at 67. In support, the court cited *Gorko*, 314 F.2d at 860. *Dock*, 27 Fed.Cl. at 67.

The Court of Federal Claims concluded that the Government's ultimate liability for pay during this period was governed exclusively by the outcome of the court-martial proceedings for which the member is being held. If the rehearing results in an acquittal at trial or on appeal, or no rehearing is held, then pay is due; otherwise not. *Cowden v. United States*, 600 F.2d 1354, 220 Ct.Cl. 490 (1979) was cited as authority. *Dock*, 27 Fed. Cl. at 68. Since Dock's case resulted in a second conviction and sentence, the trial court concluded that no pay for the period of pre-trial detention is due him.

■ In *Cowden* a soldier was tried and convicted, and after serving part of his sentence of confinement was placed on parole. His conviction was subsequently set aside, there was no retrial, and he was then released from military control. He sued for pay claimed to be due him between the time his enlistment expired and the time he was released from the military, a period of almost two years. The court concluded that, under the regulations then in effect (1975), "an enlisted man confined after expiration of his term of enlistment is due pay and allowances for that period of confinement, if the original conviction is invalidated and either no new trial occurs, or one does occur and results in acquittal." 600 F.2d at 1359. However that case would be decided under current regulations, it is not helpful here since there was a rehearing and a subsequent conviction in Dock's case. Similarly, the *Gorko* case, cited by the trial court, simply supports the proposition that the expiration of a member's enlistment, when that member is being held for trial or retrial, does not affect the jurisdiction of the military courts to adjudicate the case against the member.

The Government argues that whatever these early cases may say, current regulations, particularly those addressed to the situation of a member whose enlistment has expired, settle the matter. It is true that the basic structure of rewards and benefits for enlisted personnel in the military is tied to the enlistment contract. That contract defines the service period, and assigns an initial status. When a member's enlistment is about to expire, and the member chooses not to 're-up,' an elaborate administrative process is triggered to usher the member out of the service in a timely and proper fashion. When a member is retained in the service beyond the term of enlistment because of some act committed during the period of enlistment, the basic structure no longer applies. In this circumstance, the Government has gone to some pains to try in its regulations to write special rules to cover the possible situations that thus may arise.

In Dock's case it is important to remember that his enlistment expired after he was placed in confinement serving his sentence, and prior to the date his initial conviction was finally set aside. That is, at the time his enlistment expired he was in confinement serving his sentence which had been ordered executed under the initial conviction; his appeals were in process. When his conviction and sentence were set aside, he went from post-conviction confinement to pre-trial (pre-rehearing) confinement.[10]

Thus Dock's situation differs in two respects from the 'usual' pre-trial situation in which a soldier on active duty is confined awaiting a trial and, as *Keys* suggests, is entitled to all pay and allowances until a court-martial declares otherwise. Dock was being detained after expiration of his enlistment; and he was being detained for rehearing, rather than for trial in the first instance. Do either of these conditions dictate a different result?

Dock argues that he was retained for the convenience of the government. In *Dickenson v. United States,* 163 Ct.Cl. 512, 1963 WL 8493 (1963), the court stated that retention of a member for the convenience of the government necessitated, under the rules then in effect, that pay be given to the member. The Government responds that that rule has been expressly addressed in a change to the DODPM, ¶ 10317a. The controlling paragraph, in a section titled "Term of Enlistment Expires," now reads:

a. General. Pay and allowances accrue to a member upon return to a full duty status. Full duty is attained when a member, not in confinement, is assigned useful and productive duties (as opposed to duties prescribed by regulations for confinement facilities)....

The Government understands this as declaring that once a member's term of enlistment has expired, if he is not performing full time duties for the government he will not be paid, regardless of whether the member is retained 'for the convenience of the government.'

---

10. Therefore, DODPM ¶ 10317e ceased to be applicable to Dock, and DODPM ¶ 10317c presumptively became applicable.

In addition to DODPM ¶ 10317a, the Government points to DODPM ¶ 10317c, cited by the trial judge as a basis for denying Dock pay during the period of pre-rehearing detention. This paragraph states that an enlisted member, whose enlistment expires before trial and who is "retained in the service for the purpose of trial by court-martial" shall not be paid for any period after expiration of the enlistment, unless acquitted, the charges are dropped, or the member is restored to full-duty status.

The applicability of this regulation depends on the meaning given to the phrase "retained . . . for the purpose of trial. . . ." Following the expiration of Dock's enlistment, he was retained in the service for the purpose of serving his term of confinement pursuant to the sentence levied at his initial trial. It was not until after the sentence was set aside that he was retained in confinement for the purpose of trial (at his rehearing). A common-sense reading of this provision would understand it to apply to the latter period whenever in the course of a particular individual's situation it occurs; we so read it.

If these regulations apply to Dock, they are determinative of the issue. DODPM ¶ 10317a ties pay and allowances when an enlistment expires to a return to full duty status. DODPM ¶ 10317c on its terms would apply to this period after Dock's enlistment ended and his sentence was set aside, and would preclude payment of pay and allowances. The question that remains, then, is whether these provisions control in the face of the general statutory provisions, cited by Dock, which entitle a serving member to pay and allowances, and whether these regulations are applicable in their current form to Dock (the regulations were cast into their current form in 1987, the year after Dock's enlistment expired).

The answer is found, again, in Article 75(a). When Congress enacted Article 75(a), it addressed a singular circumstance, that of a member of the military service whose conviction and sentence are set aside, and who is re-convicted and re-sentenced for the same offense. In that singular circumstance, Congress has decreed that the executed part of the first sentence that is included in the second sentence remains in effect.

In a case in which forfeiture of *all* pay and allowances is decreed in the first sentence, the sentence of forfeiture is executed, and then reimposed by the second court martial, Article 75(a) means expressly what it says— no pay and allowances will be paid to such a member from and after the first conviction until the member is restored to full-duty status, if ever. The date that Dock's sentence was set aside holds no special significance with respect to Article 75(a). The fact remains that the first convening authority ordered the execution of a sentence forfeiting all pay from February 5, 1985 onward; it was that sentence of forfeiture, covering the same period, which was reimposed by the second court-martial. In these circumstances, the statutory mandate leaves no room for any payment of pay and allowances for the period during which the member awaits rehearing.

It is the case that ¶ 10317c purports to apply the rule of Article 75(a) only to the case of a member whose enlistment has expired before the trial is held. It is of no moment that it covers only a part of the apparent scope of Article 75(a), which does not condition its application on the expiration of an enlistment. The rule, as far as it goes, enunciated in ¶ 10317c is fully consistent with the mandate of Article 75(a), and applies specifically to the facts of Dock's situation. The trial court's determination that no pay is due Dock for this third period is correct.

## CONCLUSION

Dock is not entitled to restoration of pay and allowances for any of the periods under review. In so far as the judgment of the Court of Federal Claims is inconsistent with this, the judgment is reversed. Otherwise, we affirm the judgment of the trial court.

*REVERSED–IN–PART, AFFIRMED–IN–PART.*