*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**Stephen P. HOWELL, Staff Sergeant**
United States Marine Corps, Appellant/Cross-Appellee

**v.**

**UNITED STATES**
Appellee/Cross-Appellant

**Nos. 16-0289 & 16-0367**
Crim. App. No. 201200264

Argued May 11, 2016—Decided July 19, 2016

Military Judge: David M. Jones

For Appellant/Cross-Appellee: *Lieutenant R. Andrew Austria*, JAGC, USN (argued).

For Appellee/Cross-Appellant: *Lieutenant Robert J. Miller*, JAGC, USN (argued); *Colonel Mark K. Jamison*, USMC (on brief).

Judge SPARKS delivered the opinion of the Court, in which Senior Judge LAMBERTH joined. Judge STUCKY filed a separate concurring opinion concurring in the result. Judge OHLSON filed a separate opinion concurring in part and dissenting in part, in which Chief Judge ERDMANN joined.

———————

Judge SPARKS delivered the opinion of the Court.[1]

This matter is before us as a result of a petition for extraordinary relief filed by the Government pursuant to the All Writs Act, 28 U.S.C. §1651(a). In its petition for extraordinary relief in the nature of a writ of prohibition, the Government asked the United States Navy-Marine Corps Court of Criminal Appeals to prohibit enforcement of an order by the military judge granting Appellant/Cross-Appellee (Appellant) confinement credit pursuant to Article

---

[1] Senior Judge Royce C. Lamberth, of the United States District Court for the District of Columbia, sat by designation pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

13, UCMJ, 10 U.S.C. § 813 (2012). The lower court granted the Government's writ petition in part and denied in part. Appellant then filed a writ-appeal with this Court, challenging the lower court's jurisdiction to hear the Government's petition for extraordinary relief. The Judge Advocate General of the Navy certified four additional issues for review by this Court.[2] We hold that the Court of Criminal Appeals had jurisdiction under the All Writs Act to entertain the Government's petition for a writ of prohibition. We further hold that under the facts of this case, there was no intent to punish the accused by paying him as an E-1 while he was performing duties as and wearing the uniform of an E-6. Thus, no violation of Article 13, UCMJ, occurred and the military judge abused his discretion in awarding confinement credit.

## Background

On October 12, 2012, Appellant, then a Staff Sergeant (E-6) in the Marine Corps, was tried by a general court-martial consisting of members. Contrary to his pleas, he was convicted of violating a general regulation, rape,

---

[2] The Judge Advocate General of the Navy certified the case for review of four issues:

I. Whether the Government may invoke Article 66, UCMJ, as the jurisdictional basis for an extraordinary writ pursuant to the All Writs Act when the issue is not included as a basis for Government appeal under Article 62, UCMJ?

II. Whether the military judge, in finding an Article 13, UCMJ, violation, exceeded his authority by rejecting applicable holdings of the U.S. Court of Appeals for the Federal Circuit and the Court of Federal Claims, in order to conclude that [Appellant] was entitled to pay at the E-6 rate pending his rehearing?

III. Whether the lower court erred by concluding that the setting aside of [Appellant's] findings and sentence rendered his reduction to pay grade E-1 prospectively unexecuted pending rehearing?

IV. If a member's original sentence includes an executed reduction to pay grade E-1 and the sentence is subsequently set aside, does the action of paying that member at the E-1 rate pending rehearing constitute illegal pretrial punishment in the absence of any punitive intent?

aggravated sexual contact, forcible sodomy, assault consummated by a battery, and adultery, in violation of Articles 92, 120, 125, 128, and 134, UCMJ, 10 U.S.C. §§ 892, 920, 925, 928, and 934. The members sentenced Appellant to a dishonorable discharge, confinement for eighteen years, forfeiture of all pay and allowances, and reduction to pay grade E-1. The convening authority approved the sentence as adjudged.

On May 22, 2014, the lower court set aside the findings and sentence and authorized a rehearing. *United States v. Howell*, No. NMCCA 201200264, 2014 CCA LEXIS 321, at *38 (N-M. Ct. Crim. App. May 22, 2014) (unpublished). The convening authority ordered the rehearing on June 25, 2014. The next day, Appellant was released from confinement, returned to full duty status, permitted to wear his preconviction rank insignia of E-6 and assigned commensurate duties. However, in accordance with guidance from the Defense Finance and Accounting Service (DFAS), the command determined that Appellant was to be paid as an E-1 pending the rehearing results.

After referral of the charges, Appellant filed a motion, seeking, in relevant part, payment as an E-6 pending the results of the rehearing. The military judge noted that he did not have the authority to order the Government to restore Appellant to the grade of E-6 pending the rehearing. Instead, the military judge concluded that the Government's failure to pay Appellant as an E-6 following set aside of his conviction and the command's decision to return him to full duty status amounted to illegal pretrial punishment in violation of Article 13, UCMJ. Accordingly, the military judge granted one day of confinement credit for every day from May 22, 2014, onward that Appellant was paid at the E-1 rate.

Following the military judge's ruling, the Office of the General Counsel for DFAS provided the Government with its legal opinion that Article 75(a), UCMJ, as interpreted by *Dock v. United States*, 46 F.3d 1083 (Fed. Cir. 1995) and *Combs v. United States*, 50 Fed. Cl. 592 (Fed. Cl. 2001), provided binding legal authority to pay Appellant at the E-1 rate until the results of the rehearing were known. Based on this legal opinion, the Government filed a motion asking the military judge to reconsider the pay issue.

The military judge did not believe that the Government was acting in complete disregard of Appellant's rights.

Rather, "DFAS and the Court simply disagree on what rank [Appellant] should be paid at pending his re-trial." The military judge found that DFAS's pay position was taken in good faith based on statutory interpretation and case law. Nonetheless, the military judge adhered to his initial Article 13, UCMJ, determination.

At the rehearing, the members convicted Appellant, contrary to his pleas, of violating a lawful general order, abusive sexual contact, and adultery, in violation of Articles 92, 120, and 134, UCMJ, 10 U.S.C. §§ 892, 920, 934. Appellant was sentenced to a dishonorable discharge, confinement for nine years, forfeiture of all pay and allowances, and a reduction to E-1.

Prior to the convening authority's action, the Government filed a petition for extraordinary relief in the nature of a writ of prohibition with the lower court. The Government requested that the lower court vacate the military judge's ruling directing the convening authority to provide Appellant with Article 13, UCMJ, sentencing credit.

In *United States v. Jones*, No. NMCCA 201200264, 2015 CCA LEXIS 573, at *27, 2015 WL 9487941, at *9 (N-M. Ct. Crim. App. Dec. 29, 2015),[3] a divided court, en banc, granted the writ petition in part and denied in part. The lower court agreed with the military judge that after Appellant's first conviction was vacated and he was released from confinement and returned to full duty status, he should have been paid as an E-6 pending the results of the rehearing. The lower court found that the military judge erred only in setting the start date for the Article 13, UCMJ, credit as the date when the findings were first set aside, when instead any credit due should not have begun until the date Appellant was released from confinement. Accordingly, the Court of Criminal Appeals issued a writ of prohibition vacating the military judge's award of confinement credit for the period from the set aside of sentence on May 22, 2014, to the last day in confinement on June 25, 2014. The petition was otherwise denied.

## I.

Jurisdiction is a question of law that this Court reviews de novo. *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013). This Court has statutory jurisdiction to review the

---

[3] Howell is the real party in interest in *Jones*.

decision of the Court of Criminal Appeals under Article 67, UCMJ, 10 U.S.C. § 867 (2012). Article 67(a)(2), UCMJ, provides that this Court shall review the record in "all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces for review." The jurisdiction of the Courts of Criminal Appeals has generally been limited to appeals by the United States under Article 62, UCMJ, 10 U.S.C. § 862 (2012), and review of the findings and sentences of certain courts-martial under Article 66(b), UCMJ, 10 U.S.C. § 866(b) (2012).

Certified Issue I asks whether the Government may invoke Article 66, UCMJ, as the jurisdictional basis for an extraordinary writ to remedy an alleged Article 13, UCMJ, violation when the issue is not included as a basis for government appeal under Article 62, UCMJ.

As an initial matter, whether Article 62, UCMJ, limits the use of the All Writs Act is not before us. Article 62 limits interlocutory appeals – "[a]n appeal that occurs before the trial court's final ruling on the entire case." *Black's Law Dictionary* 118 (10th ed. 2014). Here, the trial court issued findings and sentence, and the military judge authenticated the record before the Government petitioned for relief. This was not, therefore, an interlocutory appeal.

The All Writs Act grants the power to "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act is not an independent grant of jurisdiction, nor does it expand a court's existing statutory jurisdiction. *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999). Rather, the All Writs Act requires two determinations: (1) whether the requested writ is "in aid of" the court's existing jurisdiction; and (2) whether the requested writ is "necessary or appropriate." *Denedo v. United States*, 66 M.J. 114, 119 (C.A.A.F. 2008) (internal quotation marks omitted).

**Whether issuance of the requested writ was "in aid of" the lower court's jurisdiction**

In the context of this case, writ jurisdiction under the All Writs Act is limited to those matters that are "in aid of [the Court of Criminal Appeals] respective jurisdiction[]" under Article 66, UCMJ. 28 U.S.C. § 1651(a). Article 66(b)(1),

UCMJ, requires the Court of Criminal Appeals to review the record in each trial by court-martial "in which the sentence, as approved, extends to death, dismissal of a commissioned officer, cadet, or midshipman, dishonorable or bad-conduct discharge, or confinement for one year or more."[4] In Article 66(c), Congress conferred upon the Court of Criminal Appeals an "awesome, plenary, de novo power of review." *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). Under this power, the Courts of Criminal Appeals may only "affirm … such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ.

Jurisdiction under the All Writs Act is therefore limited to matters that "ha[ve] the potential to directly affect the findings and sentence." *Ctr. For Constitutional Rights v. United States*, 72 M.J. 126, 129 (C.A.A.F. 2013) (citing *Hasan v. Gross*, 71 M.J. 416 (C.A.A.F. 2012)); *see also LRM*, 72 M.J. at 368. We can readily conclude that the Government's specific complaint regarding the military judge's ruling on confinement credit directly affects the findings and sentence. The convening authority is required "to direct application of all confinement credits for violations of Article 13 ... against the approved sentence." *United States v. Spaustat*, 57 M.J. 256, 263-64 (C.A.A.F. 2002). Accordingly, we answer Certified Question I in the affirmative and deny Appellant's writ-appeal petition for review.

### Whether issuance of the writ was "necessary and appropriate"

A writ of prohibition, like mandamus, is a "drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983). To prevail, the petitioner must show that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and

---

[4] Although the convening authority has not yet approved the sentence, the doctrine of potential jurisdiction allows appellate courts to issue opinions in matters that may reach the actual jurisdiction of the court. *See FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (the power to issue writs "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected").

indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan*, 71 M.J. at 418 (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)). With these principles in mind, we will establish the necessity and appropriateness of the Government's writ of prohibition as we proceed through our analysis of the remaining certified questions.

## II.

Certified Issue II asks whether the military judge, in finding an Article 13, UCMJ, violation, exceeded his authority by not following Article III courts' holdings that Appellant was only entitled to be paid as an E-1 pending the results of the rehearing.

Determining whether the Government's action of not paying Appellant as an E-6 pending the results of the rehearing amounted to an Article 13, UCMJ, violation is properly within the jurisdiction of the military courts, as well as this Court. This determination necessarily requires interpretation of Article 75(a), UCMJ, 10 U.S.C. § 875(a) (2012), and how this article applies when court-martial findings and sentences have been set aside by an appellate court. This is the sort of issue for which the military court ought not to defer to an Article III court's interpretation.

Article 75(a), UCMJ, provides:

> Under such regulations as the President may prescribe, all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved, except an executed dismissal or discharge, shall be restored unless a new trial or rehearing is ordered and such executed part is included in a sentence imposed upon the new trial or rehearing.

In *Dock*, the United States Court of Appeals for the Federal Circuit concluded that Article 75(a), UCMJ:

> [P]lainly requires that, with two exceptions, if a member's court-martial sentence is set aside or disapproved, all rights, privileges, and property are to be restored to the member. The first exception is that a set-aside or disapproved sentence does not undo an already executed dismissal or discharge. The second exception, controlling here, is that if a rehearing is ordered, and the member is resentenced, then only that part of the executed

> first sentence that is *not* included in the second
> sentence shall be restored to the member.

46 F.3d at 1087. Relying upon *Dock*, the United States Court of Federal Claims held in *Combs* that when a new trial is conducted, entitlement to restoration of pay is dependent upon the outcome of the new trial. 50 Fed. Cl. at 600.

In reliance upon these holdings, the Government, based on guidance received from DFAS, took a wait-and-see approach to restoring Appellant's pay grade until after the results of the rehearing were known. We acknowledge that this position is not an inherently unreasonable interpretation of Article 75(a), UCMJ. However, under the facts of this case, we disagree with this interpretation.

As we stated in *Keys v. Cole*, 31 M.J. 228 (C.M.A. 1990):

> It is clear to us that the unambiguous language of [Article 75(a), UCMJ] implies that, if a new trial or rehearing is ordered, as in this case, all property— i.e. forfeitures—will *not* be restored until that rehearing is held. *Again, of course, this provision would not entitle the United States to continue in the interim to withhold pay otherwise due by relying on the forfeiture element of a set-aside sentence.* However, it does quite clearly entitle the United States to *retain* pay *already* withheld prior to the sentence being set aside, until such time as either a decision is made not to hold a rehearing or a rehearing is held.

*Id.* at 232 (second emphasis added) (citation omitted).

The Government is within its statutory rights to not restore to an accused any forfeiture of pay and allowances he has already suffered as a result of the original conviction and sentence until after the rehearing is completed. But, Article 75(a), UCMJ, does not provide for the withholding of pay during the interim period after the findings and sentence are set aside, and the accused is returned to full duty status and his previous rank.

Historically, we have found that after a new trial is ordered, no vestiges of the former court-martial should linger, as:

> "An order granting a new trial reopens the whole case, which then stands for trial de novo, and places the accused in the same position as if no trial had been had." 24 CJS, Criminal Law, § 1511.

> As stated in *Salisbury v. Grimes*, 223 Ga 776, 158 S.E.2d 412 (1967), the grant of a new trial "wiped the slate clean as if no previous conviction and sentence had existed." *See also Manor v. Barry*, 62 Ariz 122, 154 P.2d 374 (1944), and 39 Am Jur, New Trial, § 204, wherein it is declared:

> "An order directing a new trial has the effect of vacating the proceedings and leaving the case as though no trial had been had."

*Johnson v. United States*, 19 C.M.A. 407, 408, 42 C.M.R. 9, 10 (1970).

Under this longstanding interpretation of what a rehearing entails, if an accused is released from confinement awaiting rehearing, his pay status – at least insofar as the Uniform Code of Military Justice is concerned – should be the same as if he had never been tried in the first instance.

The problem with the Federal Circuit's analysis of Article 75(a), UCMJ, is that, as with all appellate courts, review of the issue is necessarily retrospective. In other words, both conditions contained in the statutory provision will have been satisfied. First, the convening authority will have ordered a rehearing and secondly, the results of the rehearing will have been adjudged. However, if the perspective is shifted to the point at which the convening authority receives the decision of the appellate court setting aside the findings and/or the sentence, the logic of our approach becomes more evident. Upon receipt of the decision, the convening authority has a number of options before him or her. The decision might be made to simply forego a rehearing and return the accused to duty. Alternatively it might be decided that the accused should be administratively separated rather than retried. However, if a hearing is ordered and the accused is not confined, it makes perfectly good sense to restore the accused fully, including his preconviction pay grade, until the results of the hearing are known. Often, it takes some time before a rehearing is concluded. For an accused returned to full duty, the longer it takes, the greater the possibility the accused may suffer an unnecessary hardship, particularly if the accused was previously a senior noncommissioned officer. Although the record does not disclose a particular hardship in this case, it does reveal a lengthy gap between when the rehearing was ordered on June 25, 2014, and when it ultimately concluded on April 29, 2015.

The military judge, under the facts of this case, did not clearly and indisputably err in not following the Article III courts' interpretation of Article 75(a), UCMJ.[5]  Accordingly, we answer Certified Issue II in the negative.

## III.

Certified issue III asks whether the lower court erred in concluding that the setting aside of the findings and sentence rendered unexecuted the portion of Appellant's sentence reducing his pay grade to E-1 pending rehearing. We conclude that this certified issue rests on an incorrect premise – namely, that the lower court found Appellant's sentence unexecuted after it was set aside.  The Court of Criminal Appeals decision never stated that a set-aside sentence becomes "unexecuted."   Rather, the lower court concluded: "Once a court-martial sentence is set aside and thus invalidated, the Government can no longer execute it." *Jones*, 2015 CCA LEXIS 573, at *15,  2015 WL 9487941, at *5.   The Court of Criminal Appeals correctly reached this determination because, as discussed in Certified Issue II, Appellant's set-aside sentence was no longer enforceable pending a rehearing. *See United States v. Von Bergen*, 67 M.J. 290, 294 (C.A.A.F. 2009) ("'[T]he effect of ordering a rehearing is ... to place the United States and the accused in the same position as they were at the beginning of the original trial.'" (alteration in original) (quoting *United States v. Staten*, 21 C.M.A. 493, 495, 45 C.M.R. 267, 269 (1972)). Accordingly, we answer Certified Issue III in the negative.

## IV.

Certified Issue IV asks whether the Government's action of paying Appellant at the E-1 rate pending his rehearing constituted illegal pretrial punishment, in violation of

---

[5] We are cognizant of the fact that our conclusions are at odds with those of the Federal Circuit and the Court of Federal Claims. We do, however, feel that it is important to express our view with the hope that Congress and the President will clarify this aspect of Article 75(a), UCMJ.  *See generally* Military Justice Review Group, Dep't of Defense, Report of the Military Justice Review Group Part I: UCMJ Recommendations  657 (2015) (recommending that Article 75, UCMJ, be amended to require the President to establish rules governing the eligibility for pay and allowances during the period after a court-martial sentence is set aside or disapproved).

Article 13, UCMJ, in the absence of any punitive intent. We answer this certified issue in the negative.

Article 13, UCMJ, provides:

> No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

In *United States v. Palmiter*, 20 M.J. 90 (C.M.A. 1985), we set out the process for evaluating alleged Article 13, UCMJ, violations:

> [T]he question of whether particular conditions amount to punishment before trial is a matter of intent, which is determined by examining the purposes served by the restriction or condition, and whether such purposes are "reasonably related to a legitimate governmental objective."

> [I]n the absence of a showing of intent to punish, a court must look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective.

*Id.* at 95 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). Therefore, the following pertinent questions arise relevant to the facts of this case:

1.  Did the Government intend to punish Appellant by paying him as an E-1 pending the rehearing?

2.  If there was no punitive intent, did the Government's interpretation of Article 75(a), UCMJ, further a legitimate nonpunitive governmental objective?

Unlike the situation we faced in *United States v. Combs*, 47 M.J. 330 (C.A.A.F. 1997),[6] here the record is clear that there was no punitive intent behind the Government's decision to pay Appellant as an E-1 pending the rehearing results. The military judge explicitly found that the Government had not acted in complete disregard of the

---

[6] Following this decision, the appellant pursued a back pay claim in the United States Court of Federal Claims in *Combs*, 50 Fed. Cl. 592.

accused's rights. He also found that DFAS had taken a good-faith position it believed was supported by regulations, statutes, and case law interpreting Article 75(a), UCMJ, in concluding that there was no authority to pay Appellant at his former pay grade pending the results of the rehearing. As discussed above, we disagree with the Government's interpretation of Article 75(a), UCMJ. Nonetheless, there was a legitimate debate on the proper interpretation of Article 75(a), UCMJ, and disbursements to accused persons pending rehearings. From the record before us, we have no question that the Government legitimately believed that Appellant was not entitled to be paid as an E-6 pending the results of his rehearing. Accordingly, we conclude that there was no intent to punish Appellant by the Government's decision to pay him at the E-1 rate pending the results of his rehearing.

We address briefly Appellant's contention that even if there was no intent by the Government to punish, the Government's action of paying him at the E-1 rate still had a punitive effect. To the extent that any dicta in *United States v. Fischer*, 61 M.J. 415, 420-22 (C.A.A.F. 2005), suggests that such an effect is sufficient to trigger an Article 13, UCMJ, violation, we reject that view. The record must disclose an intent to punish on the part of the Government.

Irrespective of any intent to punish, Article 13, UCMJ, is violated if the activity at issue serves no legitimate, nonpunitive purpose. The Government's interpretation of Article 75(a), UCMJ, was in furtherance of a legitimate, nonpunitive governmental objective to provide an accused pending rehearing with the proper pay entitlement as prescribed by Congress. For these reasons, we hold that there was no Article 13, UCMJ, violation.

## Conclusion

Having concluded that issuance of the Government's writ of prohibition was in aid of the lower court's jurisdiction, we hold that the Government has shown a clear and indisputable right to the issuance of the writ. Here, the military judge exceeded his authority by applying confinement credit to remedy conduct that did not violate Article 13, UCMJ. We further hold that there is no other adequate means for the Government to obtain relief and that issuance of the writ is both appropriate and necessary under the circumstances.

**Decision**

Appellant's writ-appeal petition is denied. Certified Question I is answered in the affirmative. Certified Questions II, III, and IV are answered in the negative. Accordingly, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for review of the petition for extraordinary relief consistent with this opinion.

Judge STUCKY, concurring in the result.

I agree with Judge Sparks that the Government's petition for the writ was not an interlocutory appeal under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2012), that both the Court of Criminal Appeals and this Court have jurisdiction to consider the issue, and the action of paying Appellant at the E-1 rate pending his rehearing did not amount to illegal pretrial punishment. I disagree, however, with the conclusion that the military judge did not "clearly and indisputably err in not following the Article III courts' interpretation of Article 75(a), UCMJ." *United States v. Howell*, __ M.J. __, __ (10) (C.A.A.F. 2016).

The military judge quite properly recognized that he had no authority to order any particular military pay action with regard to Appellant, and took the alternative of awarding confinement credit. However, the military judge took this action because he had an underlying disagreement with the interpretation of the restoration provisions of Article 75(a) contained in *Dock v. United States*, 46 F.3d 1083, 1087–88 (Fed. Cir. 1995), and *Combs v. United States*, 50 Fed. Cl. 592, 600 (Fed. Cl. 2001). Congress has given jurisdiction over pay claims to these Article III and Article I courts, *see* 28 U.S.C. § 1491(a) and § 1295(a) (2012). In my opinion, the decisions of those courts, within their jurisdiction, are binding on us. I would therefore answer Certified Issue II in the affirmative and would refrain from answering Certified Issue III.

I concur in the result.

Judge OHLSON, with whom Chief Judge ERDMANN joins, concurring in part and dissenting in part.

OVERVIEW

In various cases during the past few decades, this Court has concluded that: (a) the effect of ordering a rehearing in a case is to place the accused in the same position he or she was in before the original trial began, *United States v. Von Bergen*, 67 M.J. 290, 294 (C.A.A.F. 2009); (b) an accused's pay status while awaiting rehearing should be the same as if the accused had never been tried in the first place, *Keys v. Cole*, 31 M.J. 228, 232 (C.M.A. 1990); (c) in determining whether there was illegal pretrial punishment under Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813 (2012), we look not only at whether there was an "intent" to punish an accused, but also at whether there was a "punitive effect," *United States v. Fischer*, 61 M.J. 415, 421 (C.A.A.F. 2005); and (d) the "primary mechanism" for addressing Article 13, UCMJ, violations is to award confinement credit. *United States v. Zarbatany*, 70 M.J. 169, 174 (C.A.A.F. 2011).

In the instant case, Appellant's[1] convictions and sentence were vacated by the United States Navy-Marine Corps Court of Criminal Appeals (CCA) and a rehearing was ordered. Pending this rehearing, Appellant's E-6 rank was restored, he was placed in an E-6 billet, and he performed E-6 duties. And yet, Appellant was paid at the E-1 pay grade—a fact that he repeatedly protested—and his loss of pay amounted to more than $20,000.

Based on these facts and the case law cited above, I conclude that the military judge did not err in finding that the circumstances in the instant case constituted illegal pretrial punishment, nor did he err in awarding confinement credit to Appellant based on this illegal pretrial punishment. Ac-

---

[1] The accused in this case stands before this Court as both an Appellant and as a Cross-Appellee. In the course of this dissent I refer to him simply as "Appellant."

cordingly, to the extent that the majority opinion[2] holds otherwise, I respectfully dissent.

ANALYSIS

I concur with the majority's decision on Certified Issues I, II, and III, but part ways as to Certified Issue IV. In my view and as explained in greater detail below, the military judge did not clearly and indisputably err in finding illegal pretrial punishment under Article 13, UCMJ, when the Government continued to enforce a set-aside punishment by paying Appellant at the E-1 pay grade while assigning him duties commensurate with an E-6 pay grade.

Certified Issue IV asks whether the Government's decision to pay Appellant at the E-1 pay grade after his sentence was set aside constitutes illegal pretrial punishment under Article 13, UCMJ. In analyzing this issue, I initially observe that Appellant's case is before this Court because of the CCA's decision to deny a writ sought by the Government to prohibit the military judge from awarding Article 13, UCMJ, confinement credit to Appellant. The case law pertaining to such writs is clear. "[T]he issuance of [an extraordinary] writ is a matter vested in the discretion of the court to which the petition is made." *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 391 (2004). A writ of prohibition will only issue if the Government establishes that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012). Further, this type of writ is a drastic remedy that should only be invoked in extraordinary cases. *See Cheney*, 542 U.S. at 380. When Appellant's case is viewed within this legal framework, I conclude that the CCA appropriately denied the writ because the military judge did not clearly and indisputably err in finding illegal pretrial punishment under Article 13, UCMJ.

Turning to the primary issue, Article 13, UCMJ, prohib-

---

[2] The term "majority opinion" refers to the opinion authored by Judge Sparks, which commands a majority of three or more judges of this Court on each of the four certified issues.

its, in relevant part, illegal pretrial punishment or penalty. *See Fischer*, 61 M.J. at 418. There is illegal pretrial punishment when the Government has "a purpose or intent to punish" as determined by examining either (1) "the intent of [the government] officials" or (2) "the purposes served by the restriction or condition, and whether such purposes are reasonably related to a legitimate governmental objective." *Zarbatany*, 70 M.J. at 174 (internal quotation marks omitted) (quoting *United States v. King*, 61 M.J. 225, 227–28 (C.A.A.F. 2005)). This Court therefore "look[s] to whether there was intent to punish *or a punitive effect.*" *Fischer*, 61 M.J. at 421 (emphasis added).

I agree with the majority that there is no evidence in the record that government officials at the command level had an intent to punish Appellant.[3] However, I disagree with the majority's decision not to consider the punitive effects of

---

[3] I note that officers in Appellant's chain of command were not the only government officials directly involved in this case. In a November 13, 2014, memorandum addressing the matter of pay in Appellant's case, the Office of the General Counsel for the Defense Finance and Accounting Service (DFAS) stated that there were two potential ways to comply with federal civilian court rulings on military pay. One was to pay Appellant at the E-1 pay grade; the other was to pay Appellant at his preconviction rate, i.e., at the E-6 pay grade. However, DFAS asserted that the latter course of action would "place [Appellant] in debt for the overpayment if the reduction is imposed at rehearing." This assertion is at best questionable because any punishment awarded at a subsequent rehearing would only apply prospectively, *see* Article 57, UCMJ, 10 U.S.C. § 857 (2012), and only the portion of the first court-martial punishment that had already deprived Appellant of property would continue to be enforced if the same punishment was imposed on rehearing, Article 75(a), UCMJ, 10 U.S.C. § 875(a) (2012). And importantly, in its memorandum DFAS failed to account for this Court's case law addressing an accused's status when awaiting a rehearing. Accordingly, by allowing military authorities to rely on a bureaucratic decision instead of this Court's interpretation of military justice matters when deciding what constitutes Article 13, UCMJ, illegal pretrial punishment, the majority cedes far too much of our institutional authority in regard to determining what Articles 13 and 75 mean in any particular criminal case. *See Garrett v. Lowe*, 39 M.J. 293, 296 n.4 (C.M.A. 1994) (noting this Court's special competence in interpreting the UCMJ).

government action to determine whether an Article 13, UCMJ, violation occurred here. As I read this Court's case law, the punitive effect inquiry is nothing more than an examination of whether the purpose of a condition had a legitimate, nonpunitive governmental objective.[4] I find nothing of the sort in the instant case.

First, a reduction in pay is an authorized *punishment* for a court-martial *conviction*. *See* Rule for Courts-Martial 1003(b)(4); *United States v. Simpson*, 10 C.M.A. 229, 232, 27 C.M.R. 303, 306 (1959) (recognizing a reduction in pay grade as a "permissible punishment" at court-martial). At the time the Government paid Appellant at the E-1 pay grade while he performed duties commensurate with an E-6 pay grade there was no court-martial conviction and therefore no valid punishment to impose because the CCA had set aside the findings and sentence. *See Von Bergen*, 67 M.J. at 294.

Second, the Government benefitted from Appellant's continued reduction in rank because it obtained Appellant's services at a reduced pay rate. The majority suggests that this windfall serves a legitimate governmental objective "to provide an accused pending rehearing with the proper pay entitlement as prescribed by Congress." *United States v. Howell*, __ M.J. __, __ (12) (C.A.A.F. 2016). However, as even the majority concludes, Article 75(a), UCMJ, did not provide the Government with a statutory basis for denying Appellant pay at the E-6 pay grade while he awaited rehearing.[5]

---

[4] *Compare Fischer*, 61 M.J. at 418 ("examining the intent of [government] officials or … the purposes served by the restriction or condition [to see if they are] reasonably related to a legitimate governmental objective" for an Article 13, UCMJ, violation (internal quotation marks omitted) (citation omitted)), *with id.* at 421 (examining punitive intent or punitive effect for an Article 13, UCMJ, violation).

[5] The statutory framework instead suggests that the Government should have paid Appellant at the E-6 pay grade. Congress has provided that an active duty servicemember is "entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204(a) (2012). Appellant was assigned duties commensurate with the pay grade of E-6. Had the Government not erroneously interpreted Article 75(a), UCMJ, it would have assigned Appellant to the E-6

Without any valid basis to reduce Appellant's pay grade, I conclude that the Government's pay entitlement decision was not "proper," and therefore the Government did not have a legitimate governmental basis to compensate Appellant at the E-1 pay grade while it received services commensurate with the E-6 pay grade.

For these reasons, I conclude that the military judge did not clearly and indisputably err in finding that it was illegal pretrial punishment "to have the Accused on full duty, wearing the rank of Staff Sergeant and performing the duties of a Staff Sergeant but receiving pay as E-1." Accordingly, I respectfully dissent from the majority's holding that there was no Article 13, UCMJ, violation and would answer Certified Issue IV in the affirmative.

CONCLUSION

I concur with the majority's resolution of Certified Issues I, II, and III, and I respectfully dissent from the majority's decision with respect to Certified Issue IV. I therefore would affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals.

---

pay grade, and it would have paid him at this pay grade. *See* 37 U.S.C. § 204(a); *cf. Bell v. United States*, 366 U.S. 393, 401–02 (1961) ("[A] soldier who has not received such a punishment from a duly constituted court-martial is entitled to the statutory pay and allowances of his grade and status, however ignoble a soldier he may be.").